BARNES, Plaintiff in error, v. STATE, Defendant in error.

*August 31—October 6, 1964.*

118

For the plaintiff in error there was a brief and oral argument by *Warren L. Kreunen* of Milwaukee.

For the defendant in error the cause was argued by *Betty R. Brown,* assistant attorney general, with whom on the briefs were *George Thompson,* attorney general, *William A. Platz,* assistant attorney general, and *William J. McCauley,* district attorney of Milwaukee county.

A brief *amicus curiae* was filed by *James M. Shellow* and *Shellow & Shellow,* all of Milwaukee, for the Milwaukee Chapter, American Civil Liberties Union.

CURRIE, C. J. The writ of error presents the issue of whether it was prejudicial error for the trial court to have denied the motion to suppress the evidence. To resolve this issue the court must resolve these subsidiary questions:

(1) Was the consent by defendant to the search of his person voluntary and not the product of duress?

(2) If such consent was the product of duress, did it constitute an unconstitutional search?

The provision of sec. 11, art I, Wis. Const.,[1] is identical to that of the Fourth amendment, United States constitution. This court long prior to *Mapp v. Ohio* (1961), 367 U. S. 643, 81 Sup. Ct. 1684, 6 L. Ed. (2d) 1081, had aligned itself with the federal rule that evidence secured as a result of a search and seizure that violates constitutional rights is inadmissible against a defendant charged with crime. *Hoyer v. State* (1923), 180 Wis. 407, 193 N. W. 89. Thus the *Mapp Case,* in making the Fourth amendment applicable to

---

[1] This section of the Wisconsin constitution provides:

"The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized."

the states, has brought no change in Wisconsin in this respect. However, the decisions of the United States supreme court as to what acts constitute unlawful searches and seizures under the Fourth amendment are by that decision made controlling on all state courts. The *Mapp* decision also enhances the weight to be accorded by the states to other federal court determinations in this sphere.

## *Consent to Search.*

Before reaching the issue of whether defendant's constitutional rights were violated by the search in this case which revealed that he was the possessor of marijuana, we must first dispose of the threshold contention of the state that he voluntarily consented to such search. This contention is grounded upon defendant's statement to the two officers, "Go ahead. I am clean." On the other hand, defendant maintains that this consent was the product of duress and therefore not voluntary.

In *Holt v. State* (1962), 17 Wis. (2d) 468, 117 N. W. (2d) 626, we were faced with the issue of whether voluntary consent had been given to search a home without a search warrant. While that case involved search of premises and not of the person, we deem the guiding principles to be applied in determining whether a consent to search has been tainted by duress are the same. These principles are: A search and seizure are not in violation of constitutional rights if the person freely and intelligently gives his unequivocal and specific consent to the search, uncontaminated by any duress or coercion, actual or implied; the state has the burden of proving by clear and positive evidence that such consent was given. *Holt v. State, supra,* pages 474, 475. See also *United States v. Smith* (2d Cir. 1962), 308 Fed. (2d) 657, 663; *McDonald v. United States* (10th Cir. 1962), 307 Fed. (2d) 272, 274; *Channel v. United States* (9th Cir. 1960),

285 Fed. (2d) 217, 219; *Judd v. United States* (D. C., D. C. 1951), 190 Fed. (2d) 649, 650.

In the instant case we do not have the benefit of any finding of fact by the trial court with respect to whether or not defendant voluntarily consented to the search. We, therefore, must make our own independent determination of this factual issue upon the evidence before us. The rule in the federal courts is that, where the trial court upon conflicting evidence finds that the search was voluntarily consented to, such finding will not be upset unless clearly erroneous. *McDonald v. United States, supra,* at page 275; *United States v. Page* (9th Cir. 1962), 302 Fed. (2d) 81, 85; *United States v. Ziemer* (7th Cir. 1961), 291 Fed. (2d) 100, 102.

The federal cases also hold that where, as here, the defendant is under arrest, the government's burden to prove voluntary consent is greater. *United States v. Page, supra,* at page 84; *Judd v. United States, supra,* at page 651. The instant defendant was not only under arrest, before the search was undertaken and he made the statement indicating consent, but he had been informed by one of the officers in effect that this justified the search. On the other hand, defendant was asked this question and gave this answer thereto:

"*Q.* Did you know that there was marijuana in any of your pockets at the time the officers searched your clothes on December 8, 1962? *A.* I did not."

This facet of the evidence makes the instant case closely akin to the situation where the defendant permits a search of his home or apartment in the mistaken belief that he has nothing there which will incriminate him. The latter situation has been held to fall within the scope of voluntary consent. *United States v. De Vivo* (D. C. N. Y. 1961), 190 Fed. Supp. 483; *United States v. Dornblut* (2d Cir. 1958),

261 Fed. (2d) 949; certiorari denied (1959), 360 U. S. 912, 79 Sup. Ct. 1298, 3 L. Ed. (2d) 1262. See also *United States v. Smith, supra,* at page 663.

The facts in both the *De Vivo* and *Dornblut Cases* are readily distinguishable from those in the instant case. In *De Vivo* the officers courteously requested permission to search without any indication that they would have made the search if permission had been refused. This was also the situation in *Holt v. State, supra,* except there the defendant had reason to believe the body of the baby might be found.[2] The defendant in *Dornblut* invited the federal officers up to his apartment and told them, "Go right in. You can look around." In none of these cases was the defendant under arrest when the consent to search was given.

This is a close case on the issue of consent, because defendant thought he was "clean." Nevertheless a majority of the court conclude that the consent given was tainted with duress and therefore not freely and voluntarily given. Not only was defendant then under arrest but he knew from the statement of the officer that his person would be searched regardless of whether he consented or not.

### Legality of the Search.

On this writ of error we are not concerned with the legality of the search of defendant's automobile but only with the search of his person. Furthermore, no question has been raised about the validity of defendant's arrest for the traffic offense which preceded the search. Therefore, the validity of the search depends upon whether or not it was justified by the arrest.

---

[2] At the trial the officers varied their testimony as given on the motion to suppress and testified that, prior to the search of the person, one officer asked defendant "if he had anything on him," and defendant then replied, "Go ahead and search. I am clean."

This court very recently reaffirmed the well-recognized principle of criminal law that the police following a valid arrest "may, without a search warrant, conduct a search of the person in order to protect themselves." *Browne v. State* (1964), 24 Wis. (2d) 491, 502, 129 N. W. (2d) 175. The United States supreme court earlier this year in *Preston v. United States* (1964), 376 U. S. 364, 367, 84 Sup. Ct. 881, 11 L. Ed. (2d) 777, stated:

"Unquestionably, when a person is lawfully arrested, the police have the right, without a search warrant, to make a contemporaneous search of the person of the accused for weapons or for the fruits of or implements used to commit the crime. *Weeks v. United States,* 232 U. S. 383, 392 [34 Sup. Ct. 341, 58 L Ed. 652] (1914); *Agnello v. United States,* 269 U. S. 20, 30 [46 Sup. Ct. 4, 70 L Ed. 145, 51 A. L. R. 409] (1925)."

Up to now there has been no decision by the United States supreme court which qualifies the above-stated rule and makes it inapplicable to arrests for minor traffic violations. The Illinois and Michigan courts have adopted such a qualification. *People v. Watkins* (1960), 19 Ill. (2d) 11, 166 N. E. (2d) 433; *People v. Mayo* (1960), 19 Ill. (2d) 136, 166 N. E. (2d) 440; *People v. Gonzales* (1959), 356 Mich. 247, 97 N. W. (2d) 16; *People v. Ziegler* (1960), 358 Mich. 355, 100 N. W. (2d) 456. While the *Mayo* and *Gonzales Cases* dealt with the search of a defendant's car and not his person, it is clear that these two courts do not draw any distinction between the two. However, from the standpoint of the reasonableness of the search for weapons in order to protect the life of the arresting officer, the search of the trunk of a car might well be held to stand in a different category from that of the search of the person of the defendant.

The view that not every case of a lawful arrest for a traffic violation justifies a search of the person of the defendant for weapons finds support in these articles and comments in

law reviews: Simeone, Search and Seizure Incident to Traffic Violations, 6 St. Louis University Law Journal (1961), 506; Note, Search and Seizure—Search Incident to Arrest for Traffic Violation, 1959 Wisconsin Law Review, 347; Note, Search and Seizure Incident to Traffic Violations, 14 Hastings Law Journal (1963), 459. A contrary view is expressed in Agata, Searches and Seizures Incident to Traffic Violations—A Reply to Professor Simeone, 7 St. Louis University Law Journal (1962), 1. The *Gonzales Case* is criticized as unsound in, Limitation on Expanding Scope of Legality of Searches and Seizures in Michigan, 9 Buffalo Law Review (1960), 382.

We are not persuaded that where a traffic offender actually is arrested, as distinguished from being handed a summons to appear in court at some future time, that it is unreasonable for the arresting officer to search his person for weapons. In a recent California case the court took note of numerous attacks which have been made upon law-enforcement officers seeking to interrogate occupants of automobiles. *People v. Davis* (1961), 188 Cal. App. (2d) 718, 722, 10 Cal. Rptr. 610. A striking example of this is afforded by *Brook v. State* (1963), 21 Wis. (2d) 32, 123 N. W. (2d) 535. Some of the most dangerous criminals are as well dressed and peaceful appearing as the majority of law-abiding citizens. It seems to us that the protection of the lives of our law-enforcement officers outweighs the slight affront to personal dignity of the arrested person who undergoes a search for weapons. We find the arguments advanced in favor of this position in Agata, Searches and Seizures Incident to Traffic Violations—A Reply to Professor Simeone, 7 St. Louis University Law Journal (1962), 1, most persuasive.

The policy of the law, which permits arrest for minor traffic violations instead of prescribing the issuance of a summons without taking the defendant into custody as the

exclusive police action, might well be reconsidered. However, that lies within the province of the legislature, not this court.

However, all searches by police officers are subject to the requirement of reasonableness. This is implicit in the wording of both sec. 11, art. I, Wis. Const., and the Fourth amendment. Not only was defendant "patted down" but the officers searched the inside of his overcoat pocket with a flashlight. We cannot conceive that this aspect of the search was a legitimate search for weapons. The only reasonable inference to be drawn from this action was that these vice-squad officers assigned to the narcotics division were searching for narcotics. We reject the state's contention that any search of the person of one lawfully arrested is a valid search. Such search to be reasonable must be limited to weapons or the fruits or instrumentalities of the crime for which the defendant was arrested. *Agnello v. United States, supra,* at page 30. Here there could be no fruits of the misdemeanor of driving with a nonoperating brake light. We have no hesitancy in holding that this use of the flashlight to uncover marijuana weed fragments in defendant's overcoat pocket transcended the bounds of reasonableness. Therefore, the evidence secured by this unreasonable search should have been excluded. Any admissions thereafter made by defendant with respect to these marijuana weed fragments were the product of this unconstitutional search and were likewise inadmissible. Without such improperly received evidence there would be no possibility of convicting defendant and therefore his discharge from custody will be directed.

While defendant conceded the lawfulness of the arrest, we deem it advisable to add the observation that the type of search here conducted raises a strong suspicion that the original arrest for the minor traffic offense committed was but a pretext to search defendant for narcotics. Cf. *Taglavore v. United States* (9th Cir. 1961), 291 Fed. (2d) 262, 265.

As the United States supreme court declared in *United States v. Lefkowitz* (1932), 285 U. S. 452, 467, 52 Sup. Ct. 420, 76 L. Ed. 877, "An arrest may not be used as a pretext to search for evidence."

*By the Court.*—Judgment reversed, and cause remanded with directions to enter a judgment of dismissal and discharge of plaintiff in error.

BEILFUSS, J. (*dissenting*). I cannot agree with the conclusion of the majority that the plaintiff in error's consent was not freely and voluntarily given because of circumstances implying duress.

I deplore, as the majority does, the police methods disclosed by this record, and I agree that the search, independent of any question of consent, was unreasonable. But the question is whether the statement by the police that they had a right to search the plaintiff in error because of the arrest constitutes duress as a matter of law.

The record in this case reveals that the plaintiff in error had been previously convicted of a narcotics violation and other felonies. This fact was known to both the police and the plaintiff in error prior to any attempt to search. I am convinced that the plaintiff in error knew why the officers wanted to search him and that he probably would be prosecuted if the officers found narcotics in the search. After the officers told him they had a right to search him because of his arrest on the traffic violation he did not dispute the claimed right, protest the search, nor even remain silent although previously having had the experience of being arrested. He affirmatively consented by his statement, "Go ahead. I am clean." Considering all the facts in the record as they pertain to the entire question of consent, I cannot find that his consent to search was given by reason of duress, actual or implied. I conclude that at the time of the search the plaintiff in error knowingly and willingly gave consent,

if not invitation, to search his person. The fact that plaintiff in error was mistaken in his belief that he had no drug on him only reinforces the conclusion that his consent was freely given. Self-serving claims of duress affecting his subjective state of mind, voiced only after the fruits of the search resulted in a prosecution, should be scrutinized, not preferred.

Implicit in the reasoning of the majority is the proposition, which I reject, that consent to an unreasonable search is an objective, rather than a subjective, determination. Circumstances implying duress may well increase the state's evidentiary burden in establishing unequivocal consent to an otherwise unlawful search. However heavy that burden may be, in my opinion it has been met in this case. I would affirm on the ground that the plaintiff in error gave his consent to an otherwise unreasonable search.

I am authorized to state that Mr. Justice HALLOWS joins in this dissent.