**STATE of Missouri, Plaintiff-Respondent,**

v.

**Frederick V. RUSH, Defendant-Appellant.**

**No. 34766.**

Missouri Court of Appeals,
St. Louis District,
Division Two.

June 26, 1973.

Daniel P. Reardon, Jr., St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, J. Brendan Ryan, Circuit Atty., Nels C. Moss, Jr., Asst. Circuit Atty., St. Louis, for plaintiff-respondent.

SIMEONE, Judge.

This is an appeal by appellant Frederick V. Rush from a jury-waived judgment of conviction in the Circuit Court of the City of St. Louis for illegally and feloniously possessing heroin. The trial court found defendant guilty as charged and assessed his punishment at two years imprisonment by the Department of Corrections.

The sole issue to be determined on this appeal is whether there was a consent search and seizure of the heroin from the appellant.

On January 30, 1971 at approximately 12:15 a. m., two police officers of the metropolitan St. Louis Police Department, in an unmarked police car, observed an automobile with four persons inside operating without lights going westbound on Evans Avenue. They pulled the car over at about 3891 Evans Avenue and Officer Bill Hawkins walked to the passenger's side of the vehicle. The defendant was seated in the right rear seat. The officer saw defendant remove his hat and place a "small shiny object in his hatband, and [replace] his hat on his head." The officer asked the defendant to step from the automobile and asked him what he had placed in his hat. Defendant stated that he had not put anything in his hat; he handed the hat to the officer and said "Go ahead and look, man," or words to that effect. The officer did not ask appellant to give him the hat. The officer looked in the hat and found a small package containing a "white powder substance," which was determined to be .09 grams of heroin in the hatband. Appellant was then arrested and advised of his rights. No warnings concerning search and seizure were made.

The operator of the vehicle was a person who had a reputation as a "drug user and a reported drug dealer." He and the other passengers were taken to the police station but they were subsequently released.

When the officer was asked on cross-examination whether it would be fair to conclude that the officers were going to search the occupants of the vehicle, he answered "In all likelihood, yes, they probably would have been searched." It is true that all of the occupants were searched.

The defendant's version of the incident was that he did not hand his hat to the officer but that it was taken from him and that he did not voluntarily give the officer his hat.

A motion to suppress was filed, heard and overruled prior to trial. The motion was renewed at the conclusion of all the evidence and preserved in the motion for new trial.

The court found the defendant guilty and, in its findings of fact and conclusions

of law, found that "the defendant was in control of his hat at the time the automobile in which he was riding was stopped; that at the time he gave his hat to the police officer he was not under arrest; that he gave his verbal assent to the police officer to examine his hat; that his assent was given freely and with understanding and was not given under any duress or force exerted by the police officer. The Court finds, beyond a reasonable doubt, that the defendant on January 30, 1971, was illegally and feloniously in possession of a narcotic drug, heroin."

The motion for new trial was overruled, allocution granted and sentence imposed.

The appellant's sole point on this appeal is that the trial court erred in failing to suppress the heroin seized from the appellant on the ground that the seizure violated his rights under the Fourth and Fourteenth Amendments to the Constitution of the United States and § 15 of Article I of the Constitution of the State of Missouri, V.A. M.S.

We have jurisdiction because the construction of the Constitution is not involved.

■ This is a court tried case. We are not to set aside the trial court's findings unless they be clearly erroneous, Rules 73.-01(d) and 28.18, V.A.M.R., and we defer to the findings of the court on matters of credibility.

As stated, the sole issue is whether the search conducted by the officers was made with the consent of the appellant and whether the trial court clearly erred in finding that appellant consented to the search.

■ The prohibition of the Fourth Amendment against unreasonable searches and seizures applies to the states through the due process clause of the Fourteenth Amendment. Mapp v. Ohio 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961);

State v. Witherspoon, 460 S.W.2d 281, 283–284 (Mo.1970). A search may be made without a warrant under one of the few, specific, well-recognized exceptions. It is well established that a search conducted with the consent of the person is constitutionally permissible. State v. Virdure, 371 S.W.2d 196 (Mo.1963). The burden of proving a consent search is upon the state. This burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority. The burden is to prove that the consent was freely and voluntarily given. Bumper v. North Carolina, 391 U.S. 543, 548, 88 S.Ct. 1788, 20 L.Ed. 2d 797 (1968). The consent must be voluntary, unequivocal, free from coercion, either express or implied. State v. Witherspoon, *supra*, 460 S.W.2d at 289. There is no specific requirement that the person consenting to the search be specifically advised by the officers of his Fourth Amendment rights or that it be shown he was already aware of those rights. State v. Witherspoon, *supra* at 288.

■ In determining whether there is a voluntary consent to search, the courts consider the totality of the circumstances and give due consideration to a variety of factors from which it may be reasonably concluded that there was or was not consent. No hard and fast rule can be laid down. This determination hinges upon many factors including but not limited to the number of officers present, the degree to which they emphasized their authority, whether weapons were displayed, whether the person was already in police custody, whether there was any fraud or misleading on the part of the officers, and the evidence as to what was said and done by the person consenting. See discussion in Annot., 9 A.L.R.3d 858 (1966); George, Constitutional Limitations on Evidence in Criminal Cases, 46–49 (1969); Scurlock, Criminal Procedure, 38 U.M.K.C.Law Rev. 167, 204–205 (1970); Lockhart, Kamisar and Choper, Constitutional Law, 2nd Ed., 561 (1967).

■ Considering the factors and under the record here, we agree with the trial court that the defendant voluntarily consented to a search of his hat. The defendant was not under arrest at the time of the search, (voluntary consent may be more easily found before arrest) and there was no fraud or misleading as in Bumper v. North Carolina, *supra,* where the officers represented to the defendant's grandmother that they had a search warrant when they did not. No weapons were drawn, there was no evidence of any threats or promises and, most importantly, the defendant was not requested to submit to a search. The trial court found that the officer did not request appellant to give him his hat. An inquiry was addressed to the appellant by the officer (he asked him what he had placed in the hat) and his response in both word and deed was a voluntary consent to search.

Appellant relies on State v. Young, 425 S.W.2d 177 (Mo.1968), and Barnes v. State, 25 Wis.2d 116, 130 N.W.2d 264 (1964). In State v. Young, *supra,* 425 S. W.2d at 179, there was uncontradicted testimony that the police actually communicated their intention to search the trunk of the defendant's car "whether you like it or not." Moreover, the defendant had been arrested and the police were present with a dog. Furthermore, the officer had no knowledge that there was anything offensive to the law " . . . and defendant had done nothing to cause [Officer] Boyd to believe he was concealing anything." State v. Young, *supra* at 181. Such is not the case here. The officer saw appellant place a packet in his hat.

In *Barnes* the defendant was not only under arrest, but he knew from the statement of the officer that he would be searched "whether he consented or not." Barnes v. State, *supra,* 130 N.W.2d at 268.

Appellant also relies on State v. Witherspoon, supra, and on the admission of one of the officers that the occupants of the car "in all likelihood" would have been searched in any event after the car was stopped. There is no evidence that this apparent intention was in any way conveyed to the appellant before he handed his hat to the officer. The other circumstances also make it distinguishable from *Witherspoon.*

In *Witherspoon* the record did not reveal any voluntary expression of consent. "In this case Witherspoon did not give any oral consent." The driver of the automobile in which Witherspoon had been riding had already been arrested, and the "record [did] not contain sufficient facts from which [the court] could reasonably conclude that Witherspoon freely, intelligently and unequivocally intended to or did waive his constitutional right, and thus consent to the search." State v. Witherspoon, *supra,* 460 S.W.2d at 289. Furthermore, *Witherspoon* was distinguished in State v. Pruitt, 479 S.W.2d 785, 788 (Mo. banc 1972), where consent was found when the mother of the defendant said "Okay" in response to a request to "look around."

In Judd v. United States, 89 U.S.App.D. C. 64, 190 F.2d 649 (1951), the defendant was incarcerated and was being interrogated. In such circumstances consent was not voluntary. See Annot., 9 A.L.R.3d 858, 877 (1966).

The other cases relied on by the appellant are distinguishable and are not controlling here.

This case is similar to Wren v. United States, 352 F.2d 617 (10th Cir. 1965), U.S. cert. den. at 384 U.S. 944, 86 S.Ct. 1469, 16 L.Ed.2d 542. Policemen sent to the scene on a report that two men in a parked car were annoying passersby, came upon defendant Wren and another man and questioned them. Defendant's companion was taken to headquarters, after which an officer asked Wren if he could look in the trunk. Wren replied affirmatively, got his key and opened the trunk. Afterwards,

the officer asked to look in the passenger compartment and Wren replied, "Go search anywhere you want to." The officer did, found a revolver under a seat, and Wren, a convicted felon, was faced with another conviction for a violation of the Federal Firearms Act. The court upheld the search, finding an invitation to search and that the consent was intelligently and understandingly made.

Based on the facts and the law, the judgment of the trial court in finding a consent search and in denying the appellant's motions to suppress cannot be said to be clearly erroneous.

The judgment is affirmed.

SMITH, P. J., and KELLY and GUNN, JJ., concur.