STATE of Missouri, Respondent,

v.

Cedric SAYLES, Appellant.

No. 40312.

Missouri Court of Appeals, Eastern District, Division Three.

March 13, 1979.

Charles H. Staples, Sp. Public Defender, Staples & Willis, St. Louis, for appellant.

John D. Ashcroft, Atty. Gen., Steven D. Steinhilber, Asst. Atty. Gen., Jefferson City, for respondent.

GUNN, Judge.

Defendant was convicted of first degree murder, first degree burglary, assault with intent to kill and first degree robbery. His appeal to the Missouri Supreme Court was transferred by mandate to this court for opinion.

The single point raised in defendant's appeal is that the seizure of the murder weapon from defendant's parents' house was the result of an unconstitutional search. We affirm.

The evidence of defendant's guilt is overwhelming. The victims of his ferine attack were an elderly woman and her daughter in their St. Louis home. Both women were shot by a .22 caliber pistol—the daughter's wound being mortal. A bullet, pierced the mother's body, but her wound was not fatal. However, she succumbed to a heart attack prior to the trial. The defendant was observed in the yard of the victims' home before a series of gunshots were heard. He was seen carrying a pistol and was positively identified on the victims' property shortly before and after the shootings. He was also observed driving the victims' auto from their garage and was subsequently captured by police in a foot chase after he had fled from the stolen auto.

The day after the crime spree a police officer participating in the investigation went to defendant's parents' home. Defendant's mother was present and the police officer told her that he would like permission to search the house for the gun used in the homicide. According to the police officer at the motion to suppress evidence, he asked the mother: "I'd like to search Cedric's [defendant's] room *and any place that he might stay in the house.*" (emphasis added) After making a telephone call to her husband (defendant's father)[1], the mother gave the police officer permission to make the search that he had requested. Defendant's brother who was home on

1. The mother and father denied any such phone call.

leave from the Army was directed by the mother to take the police officer to the defendant's bedroom on the third floor of the house which was shared by the defendant, his 21 year old brother and 21 year old cousin. A brief search of the bedroom revealed nothing. The police officer then asked the defendant's brother: "if there was anywhere else in the house that Cedric might spend a lot of time, and Carl [the brother] advised me that they had like a recreation room in the basement, and Cedric sometimes slept down there." The defendant's brother took the police officer to the basement where the search for the weapon continued. The brother "walked to a window in the back of the basement that had a curtain over it, and moved the curtain aside, apparently to look out the window. When he [the brother] raised the curtain he said, 'Officer, is this what you are looking for?' and indicated the revolver laying on the window sill." The gun was taken by the police officer and was ballistically determined to be the weapon used to shoot the victims.

■ The defendant moved to suppress the gun as evidence in the trial, claiming that its seizure was unconstitutionally infirm as a result of an unlawful, warrantless search. In support of the motion to suppress, the defendant has acknowledged that the mother gave the police officer consent to search the defendant's bedroom on the third floor of the house. However, the mother in contradiction to the police officer's testimony steadfastly denied any consent to search the basement. The defendant concedes that there may be rightful consentive search when consent is given by one with proper standing. And defendant does not contest the fact that the mother could and properly did give consent to the search of the bedroom, which defendant shared with his brother and cousin. His argument is that the state must prove consent by clear and convincing evidence—not by a mere preponderance of the evidence. Here, the evidence is undisputed that the basement where the pistol was found was used by nearly everyone in the house as a sleeping quarters in the hot summer and as a recreational area. The defendant and his entire family made use of the basement. The conflict arises as to whether the consent by the mother of a search in the house extended to the basement area where the gun was found. The police officer said that he was given such consent when he asked to search the defendant's bedroom "and any place that he might stay in the house." It is clear from the evidence that the defendant did stay with others in the basement on a frequent basis. The mother testified that the police officer only asked to search the bedroom and not any other place; that her consent to the search was limited to the bedroom. The trial judge in ruling in the motion to suppress chose to believe the police officer. We find that the trial court in believing the testimony of the police officer was not in error in overruling defendant's motion to suppress the introduction of the pistol, for if the trial court were to believe the police officer, the consent to search did extend to the basement.

In reaching our decision we are guided by the unchallenged fact that the house belonged to defendant's parents, and they had not relinquished their control over the basement to defendant's exclusive use. The basement was available to all members of the household, and the defendant did not have a reasonable right of privacy to the basement where the gun was found. The only conflict that exists is whether the police officer was given consent to search the basement, and the evidence was sufficient to support such a finding by the trial court. Clearly defendant's mother could give the requisite consent under the circumstances here to search the entire house. *State v. Pruitt*, 479 S.W.2d 785 (Mo. banc 1972); *State v. Abbott*, 571 S.W.2d 809 (Mo.App. 1978); *State v. Williams*, 536 S.W.2d 947 (Mo.App.1976).

■ The defendant argues that proof of consent should be clear and convincing evidence established by "written evidence of

the fact of and scope of consent."[2] But that is not the law. As defendant acknowledges in his brief, "[t]he State has the burden to prove by a preponderance of the evidence there was consent to search the place where the evidence was seized," and, indeed, that is the rule in Missouri—proof of consent by a preponderance of the evidence. *State v. Peterson*, 525 S.W.2d 599 (Mo.App.1975).

█ The trial court chose to believe the police officer's testimony regarding the consent to permit his search of the basement. It is the trial court's function—not ours—to resolve conflicts in testimony and determine the credibility of witnesses. *State v. Alewine*, 474 S.W.2d 848 (Mo.1975); *State v. Oldham*, 546 S.W.2d 766 (Mo.App.1977). The evidence was sufficient to support the trial court's finding that the search of the basement was properly made with valid consent.

The defendant also argues that his brother could not give consent to search the basement as he was home on leave from the Army and was only temporarily at the defendant's parents' home. But our decision rests on the mother's consent to the search, and we need not deal with whether the brother could also give consent.

Judgment affirmed.

REINHARD, P. J., and CRIST, J., concur.

---

**2.** Defendant relies on *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), for his written consent. But *Katz*—a wire tap case not decided on the consent issue—is not on point.