**STATE of Missouri, Respondent,**

v.

**Roy DuBOSE, Appellant.**

No. 42541.

Missouri Court of Appeals,
Eastern District,
Division Three.

April 23, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 12, 1981.

Application to Transfer Denied
July 14, 1981.

Samuel Raban, St. Louis, Shaw, Howlett & Schwartz, James J. Knappenberger, Clayton, for appellant.

George A. Peach, Circuit Atty., St. Louis, John Ashcroft, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, for respondent.

PUDLOWSKI, Judge.

Defendant appeals a jury conviction of arson of insured property in violation of § 560.030 RSMo 1978. Judgment affirmed.

 We first consider defendant's contention which challenges the sufficiency of the evidence. In deciding a question of that nature, this court must examine the facts in the light most favorable to the state. *State v. Nichelson*, 546 S.W.2d 539, 542 (Mo.App.1977). All evidence and inferences to the contrary will be disregarded. *State v. Johnson*, 447 S.W.2d 285, 287 (Mo. 1969). In order to make a submissible case on a charge of arson, the state must prove: 1) a building was on fire; 2) the fire was of incendiary origin; 3) defendant participated in the commission of the crime. *State v. Bunton*, 453 S.W.2d 949, 952 (Mo.1970); *State v. Lewis*, 571 S.W.2d 125, 126 (Mo. App.1978). Evidence that the building in question did in fact catch fire and burn on September 10, 1978 is direct and uncontroverted. However, there is no direct evidence establishing either the incendiary origin of the fire or the agency of the accused. Thus, if this conviction is to be affirmed, it must be on the basis of circumstantial evidence. Any fact in a criminal case can be established by circumstantial evidence. *State v. McGee*, 592 S.W.2d 886, 887 (Mo. App. en banc 1980). However, to make a circumstantial case the state's evidence must show a set of circumstances consistent with each other, consistent with a hypothesis that defendant was guilty and at the same time inconsistent with a hypothesis that he is innocent and with every other rational hypothesis except that of guilt. *State v. Bunton*, 453 S.W.2d at 592.

The relevant facts brought forth at trial, are as follows: Defendant purchased the building in question, located at 5500 West Florissant, and the automobile repair business located therein, in February, 1977. The previous owner had insured the building and its contents for a total of $50,000. At the time of the sale, defendant acquired title to those policies. In July, 1978, about two months before the fire, defendant increased the insurance coverage on the building and its contents by $50,000. Prior to the fire defendant had no problem with the building's electrical system and the gas was turned off.

At about 4:00 a. m. on September 10, 1978, as Officer Jerry Dodson of the St. Louis Police Department passed 5500 West Florissant, he noticed smoke coming from the building. The officer made a U-turn to further investigate the source of the smoke, and observed a green and white pick-up

truck coming up the alley on the side of the building. Illumination from his headlights and from the street enabled Officer Dodson to look at the driver for approximately thirty seconds. On September 20, 1978, ten days after the fire, Officer Dodson picked defendant out of a police line-up and stated that he was "pretty sure but not positive" that defendant was the man in the truck on the morning of the fire. Both before and at the time of the fire, defendant was the owner of a green and white pick-up truck.

When firemen arrived at the building, they found all but one of the several gates locked. All doors to the flaming building were also locked. The fire was an "intense blaze" requiring thirty-three firemen two and one-half hours to control. Theodore Richardson, a fire investigator for the St. Louis Fire Department arrived on the scene at around 4:15 a. m. His investigation revealed that there were in fact two separate fires: one in the office area and one in the complete opposite end of the building. The two fires were separated by a thirteen inch masonry wall. In the office, Richardson found a five gallon container filled with one gallon of gasoline. In the jargon of fire investigation, Richardson observed that the office area had burned in an "inverted cone" pattern, indicating an unusually low point of origin of the fire. He also noted that the charred wood which remained in the office was burned in an "alligator" pattern. To Officer Richardson, a fire investigator of eight years, these facts indicated that the fire was started by a rapid, intense burning of a flammable liquid. He testified it appeared to him that someone had poured a flammable substance on the wooden floor and lit it. Thus, in Richardson's opinion both fires were incendiary in nature. Officer O'Connor, assigned to the Bomb and Arson Section of the St. Louis Police Department, concurred. When Officer O'Connor inspected the premises two days after the fire, he observed three or four plastic containers placed on the floor of the building's second story. The plastic containers held toluene, a highly flammable liquid and appeared to have been strategically spaced approximately eight to ten feet apart from one another. In the jargon of fire investigation the containers were a "trailer system." Such a system encourages the fire to spread throughout the building yet allows the incendiary to ignite the fire and to exit before the fire has consumed the entire building.

Defendant arrived at the scene of the fire at approximately 5:00 a. m. After examining the building, he told a police patrolman that an IBM typewriter and a "rollaround" toolbox had been taken from the office area. The toolbox was four and one-half feet tall and three feet wide. The patrolman noted that none of the locks in the office were broken and that defendant could not show where a burglar had forced entry. Defendant later told Richardson that everything was locked up as usual when he left the previous evening and that he had the only key.

At the time of the fire, defendant was indebted to both a bank and a finance company for an amount totaling in excess of $2,500. Neither loan, however, involved the property at 5500 West Florissant.

■ Tested by the appropriate standard there was sufficient circumstantial evidence to establish that the building was ignited due to an incendiary act. Evidence on this point consisted of proof that: The building was consumed by two fires, which were separated from one another by a nonflammable, thirteen inch masonry wall. The fires burned in a manner which indicated that they originated due to the ignition of flammable substances at or near the floor of the building. Highly flammable liquids were found in the building; a nearly empty five gallon container holding gasoline was found near the situs of the fire in the office and strategically positioned containers filled with a highly flammable substance were found in another part of the building. There was no evidence that the building's wiring or methane gas lines were defective or could have caused the fire. Two fire investigators opined the fire was incendiary in origin.

The evidence also authorized a finding that defendant was responsible for lighting the fires. The evidence established that defendant doubled the insurance on the building and its contents about two months prior to the fire. Defendant had substantial outstanding debts at the time of the fire. On the night of the fire defendant stated to a police officer he had securely locked all doors to the building at the end of the business day. Defendant had sole possession of the keys to the building. Defendant claimed that a typewriter and a very large toolbox had been taken from the building. However, there was no sign of forced entry. Officer Dodson identified defendant as the man he had seen driving away from the building in a green and white pick-up truck minutes after the fire had been ignited. Defendant owned such a truck at the time of the fire. The evidence was sufficient to establish defendant's criminal culpability because from it the jury could reasonably have found that defendant committed the act of setting fire to the building. *State v. Lewis*, 571 S.W.2d 125, 126 (Mo.App.1978). Further, the evidence established that defendant had a financial motive and opportunity to commit the crime. These aid in finding defendant's guilt. *State v. Paglino*, 291 S.W.2d 850, 857 (Mo.1956); *State v. Parker*, 543 S.W.2d 236, 241–243 (Mo.App.1976).

We next consider defendant's allegation that the trial court erred in admitting testimony and physical evidence which was the product of illegal searches conducted by officers of the St. Louis Police Department. The record shows that on September 12, 1978, two days after the fire, Officer Thomas O'Connor, Bomb and Arson Section of the St. Louis Police Department, arrived at the scene of the fire accompanied by two detectives. When they arrived, defendant was present and was talking to an insurance claims adjuster. The policemen had no warrant either to search the premises or to seize items thereon. O'Connor introduced himself to defendant and told him that they were there "in order to ascertain exactly how this fire originated." Defendant responded "Go ahead" or words to that effect. Officer O'Connor proceeded to inspect the entire first floor. He then went to the second floor where he found three or four plastic containers, approximately eight to ten feet apart, holding a substance O'Connor identified as toluene, a highly flammable liquid. During the course of making the investigation O'Connor summoned an evidence technician, Officer Vogan, assigned to the St. Louis Police Department's Evidence Technician Unit, to respond to 5500 West Florissant Avenue. Officer O'Connor instructed the technician to photograph various portions of the building and to seize samples of the liquid found in the above described containers. The items obtained from the building and the testimonies of both Officers O'Connor and Vogan, were admitted into evidence, notwithstanding defense counsel's objection that the search and seizure violated the fourth amendment.

The fourth amendment to the United States Constitution prohibits unreasonable searches and seizures. This protection applies to the states through the due process clause of the fourteenth amendment. *Mapp v. Ohio*, 367 U.S. 643, 654–655, 81 S.Ct. 1684, 1691–1692, 6 L.Ed.2d 1081 (1961); *State v. Witherspoon*, 460 S.W.2d 281, 283–284 (Mo.1970). It is undisputed that the individuals conducting the search of defendant's building did not obtain a warrant. A search without a warrant is unreasonable under the fourth amendment unless it falls within certain carefully delineated exceptions. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967); *State v. Rush*, 497 S.W.2d 213, 215 (Mo.App.1973). Among the exceptions are searches with consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222, 93 S.Ct. 2041, 2045, 36 L.Ed.2d 854 (1973); *State v. Rush*, 497 S.W.2d at 215. Consent must be voluntarily given, *Schneckloth v. Bustamonte*, 412 U.S. at 222, 93 S.Ct. at 2045, uninduced by fraud or coercion, express or implied, *State v. Witherspoon*, 460 S.W.2d at 288 and cannot merely be acquiescence to lawful authority. *Bumper v. North Carolina*, 391 U.S. 543,

548, 88 S.Ct. 1788, 1791–1792, 20 L.Ed.2d 797 (1968); *State v. Rush*, 497 S.W.2d at 215.

In Missouri, the state must prove consent to a warrantless search by a preponderance of the evidence. *State v. Sayles*, 579 S.W.2d 748, 751 (Mo.App.1979). In determining whether consent was voluntary, courts must consider the "totality of the surrounding circumstances." *Schneckloth v. Bustamonte*, 412 U.S. at 226, 93 S.Ct. at 2047; *State v. Worthon*, 585 S.W.2d 143, 148 (Mo.App.1979). It is well established that the determination of whether consent was voluntary depends on many factors, including but not limited to "the number of officers present, the degree to which they emphasized their authority, whether weapons were displayed, whether the person was already in police custody, whether there was any fraud or misleading on the part of the officers, and the evidence as to what was said and done by the person consenting." *State v. Rush*, 497 S.W.2d at 215. Although knowledge of the right to refuse consent is relevant, it is not essential in showing consent. *Schneckloth v. Bustamonte*, 412 U.S. at 234, 93 S.Ct. at 2051.

Upon considering the totality of circumstances in the case before us we conclude defendant voluntarily consented to the warrantless search of his property and the seizure of evidence therefrom. When Officer O'Connor, and two detectives, approached defendant he was speaking to an insurance adjuster. Defendant was not taken into police custody at that time. Nothing in the record indicates that a display of force was made. Apparently guns were neither worn nor displayed. Further, the officer did not defraud or mislead defendant as to the purpose of his presence. The record shows neither that the officers demanded admission into the building nor that defendant merely acquiesced. The entire investigation was conducted without objection from defendant.

All of the case law on which defendant relies to support the proposition that the search was illegal is either inapposite or distinguishable. Defendant, relying on *State v. Young*, 425 S.W.2d 177 (Mo. 1968), argues that the mere fact that the police outnumbered the defendant at the time of the request to search is relevant to a determination of consent. We agree that the number of police is a factor to be considered. However, it is not determinative of whether consent was voluntary. Further, *Young* is distinguishable. In that case, the owner of the car searched by the police testified that he agreed to open the trunk only after having been told, "We are going to be looking . . . now, whether you like it or not." *State v. Young*, 425 S.W.2d at 179. That type of "consent" elicited by threats and coercion, prompted the court to find that appellant was merely submitting to authority. Such coercion was clearly not present in the instant case. Defendant cites *State v. Luna*, 266 S.W. 755 (Mo.App. 1924) for the proposition that a reply of simply "go ahead" to a policeman's request to search defendant's property does not constitute voluntary consent. Defendant has overlooked the fact that in *Luna* "consent" was obtained only after the sheriff claimed to have a valid search warrant. The warrant was, in fact, invalid. No such misrepresentation formed the basis for defendant's consent. Finally, defendant argues that in *State v. Owens*, 302 Mo. 348, 259 S.W. 100 (1924), the Missouri Supreme Court held that an officer appearing in his official capacity and requesting permission to search did not receive valid consent. That case is distinguishable because consent was obtained from a person who was in police custody at the time of the request. This court has established that voluntary consent is more difficult to find after arrest. *State v. Rush*, 497 S.W.2d at 216.

Defendant argues in the alternative that consent given to Officer O'Connor on September 12, 1978 did not extend to a subsequent search by Officer Vogan. Defendant bases this argument upon a mistake made by Officer Vogan at trial. Officer Vogan testified he photographed the building and seized evidence from it on September 14, 1978. However, the record clearly indicates Officer Vogan was sum-

moned to the building on September 12, 1978 by Officer O'Connor. O'Connor requested Vogan, an evidence technician, come to the building after O'Connor had discovered the containers of toluene. The action taken by Officer Vogan was done at Officer O'Connor's request and constituted a portion of the investigation conducted by Officer O'Connor.

Defendant also argues that warrantless searches and seizures should not be allowed as a matter of course. We wholeheartedly agree. Our ruling is this case should under no circumstances be interpreted as encouraging disregard for proper procedures for obtaining search warrants. Consent which is truly voluntary, however, is a well recognized exception to the fourth amendment protection against unreasonable searches and seizures and, when proved, should be effective as such.

CRIST, P. J., and REINHARD and SNYDER, JJ., concur.