George R. JARRETT, Plaintiff-Appellant,

v.

Florence HILL, R. Dean·Wochner, M.D., Everett J. Fox, Francis X. Slack, James F. Declue, John H. Clark, Raymond D. Percich, and James F. Conway, Defendants-Respondents.

No. 45396.

Missouri Court of Appeals,
Eastern District,
Division Two.

Feb. 1, 1983.

Motion for Rehearing/Transfer to Supreme Court Denied March 17, 1983.

Application to Transfer Denied
April 26, 1983.

Robert M. Hamlett, St. Louis, for plaintiff-appellant.

Judith A. Ronzio, St. Louis, for defendants-respondents.

GAERTNER, Judge.

This is an appeal by appellant George Jarrett from a judgment of the Circuit Court of the City of St. Louis which affirmed a decision of the Civil Service Commission of the City of St. Louis. The Commission had upheld the determination by the Department of Health and Hospitals (the appointing authority) to suspend and subsequently dismiss Mr. Jarrett from his

position as an Emergency Medical Technician I in the classified service of the City of St. Louis.

Appellant was employed by the City of St. Louis in the classified service as an Emergency Medical Technician I (EMT I) in December, 1973. A prerequisite to employment in that capacity was appellant's licensure by the State of Missouri as an Ambulance Attendant. In July, 1977, Appellant was licensed by the State as a Mobile Emergency Medical Technician—commonly referred to as a Paramedic. Such licensure was a prerequisite to employment as an Emergency Medical Technician II (EMT II). However, appellant was not promoted from EMT I to EMT II at any time after his licensure as a Paramedic.

██ On January 27, 1978, appellant was suspended without pay for five days. On February 21, 1978, he was dismissed. On each occasion he was given a notification form specifying the reasons for the disciplinary action. First to the Civil Service Commission, again to the Circuit Court, and now here appellant challenges the sufficiency of the evidence in support of these reasons. The scope of our review is equivalent to that of the Circuit Court, and we therefore review only the decision of the Civil Service Commission. *Sandbothe v. City of Olivette,* 599 S.W.2d 38 (Mo.App. 1980). In addition we are limited to a determination of whether the decision of the Commission is supported by competent and substantial evidence upon the whole record, whether it was arbitrary, capricious or unreasonable, or whether the Commission abused its discretion. § 536.140, RSMo 1978; *Hermel, Inc. v. State Tax Commission,* 564 S.W.2d 888 (Mo. banc 1978). Moreover, the evidence must be considered in a light most favorable to the finding of the Commission, together with all reasonable inferences which support it, and if the evidence would support either of two opposed findings, the reviewing court is bound by the Commission's determination. *Hermel, Inc.,* 564 S.W.2d at 894; *Board of Education, Mt. Vernon Schools v. Shank,* 542 S.W.2d 779, 782 (Mo. banc 1976).

Appellant's first point on appeal is that the Civil Service Commission erred in upholding appellant's five day suspension for the reason that the appointing authority failed to offer any evidence explaining the disparate treatment of appellant as compared with another person similarly involved in the suspension-related incident. Appellant concedes there is no serious dispute as to the specific facts of the incident. Appellant and one Matt Wynn were assigned to an ambulance which was dispatched to the Marquette Park Recreation Center to assist a young girl who had "fallen from some parallel bars and was complaining of pain in her back." After talking with the girl, both appellant and Wynn were of the opinion that the patient's injuries did not require the use of a back board. They allowed the patient to walk in her stocking feet over wet pavement to the ambulance.

Appellant concedes that the appointing authority was entitled to ask whether he and Wynn had erred in some way in handling this incident. Appellant further concedes that the appointing authority was also entitled to take appropriate disciplinary action, if necessary, to assure proper treatment of patients in the future.

██ There was evidence that as a part of training in the ambulance service, members are expected to be familiar with the text *The Emergency Care and Transportation of Sick and Injured,* Second Edition. On page 171 of the text, it states:

"Since the EMT at the scene of an accident can never be certain if a suspected spinal injury is safe or dangerous, he must consider all spinal injuries as potentially dangerous and treat them as such."

Appellant testified he was familiar with this reference and that for any suspected spinal injury a back board or an immobilizing device should be used. The Medical Director for the Emergency Medical Service testified that spinal injuries sometimes present no symptoms and no pain. Therefore, patients with suspected spinal injuries should be placed on back boards for their own protection. Additionally, the Director

of Emergency Medical Service testified that appellant and Wynn had the necessary medical expertise to know that the patient should have been placed on a back board and that she should not have been allowed to walk over wet pavement to the ambulance in her stocking feet. This evidence amply supported the finding of the Commission that:

"The employee has committed an act to the prejudice of the Service, dereluction [sic] of duty, the employee walked a patient barefoot to the ambulance. Failed to use a back board on a possible back injury patient."

In addition, appellant complains of the fact that he received a five day suspension without pay because of this incident, while Wynn received only a verbal reprimand. He contends this disparity of treatment indicates the arbitrary and capricious nature of the Commission's determination. We do not agree.

While appellant was classified by the City as an EMT I, he held a state license as a Mobile Emergency Medical Technician Ambulance Attendant or "Paramedic." Mr. Wynn had the same City classification of EMT I, but he was only licensed by the State as an Ambulance Attendant Driver. There is a substantial difference under State law between a Paramedic and an Ambulance Attendant Driver. A Paramedic must meet the requirements to be an Attendant plus successfully complete an emergency service training program pursuant to § 190.145.2(6), RSMo 1978. Appellant testified that if he and Wynn had disagreed on how to transport the patient, "then still by State law it's my judgment since I possess a Paramedic license and [Wynn] does not." Wynn testified to the same effect.

The Director of the Emergency Medical Service requested and received reports of this incident from all the participants and talked personally with appellant. It is undisputed that although appellant and Wynn did not disagree on how to transport the patient, both viewed appellant as more qualified to make medical judgments. The

Director, therefore, had a rational and reasonable basis for holding appellant more accountable for a serious misjudgment in not using a back board on the patient. The decision to impose discipline on both employees, and the decision to impose a more severe sanction on the appellant than on Wynn was not arbitrary or capricious. This court has no authority to substitute its discretion for the discretion legally vested in the appointing authority. *Holley v. Personnel Advisory Board,* 536 S.W.2d 830 (Mo. App.1976); § 536.140.5, RSMo 1978. Appellant's first point on appeal has no merit.

Appellant's second point is that the Civil Service Commission erred in upholding his dismissal based upon his alleged failure to comply with an order requiring him to obtain an eye examination at the eye clinic of City Hospital. Appellant argues that he in fact complied with the order and that the Commission's decision is wholly unsupported by competent and substantial evidence.

At the hearing before the Commission, Dr. Wettach, the Medical Director for the Emergency Medical Service, testified that he had received several complaints from appellant's colleagues that appellant's vision was inadequate to perform the driving jobs that were necessary. Specifically, the complaints stated that appellant was unable to identify numbers on buildings and occasionally missed street signs. The complainants apparently were fearful that appellant's vision was actually so bad that it might jeopardize their safety.

Following receipt of these complaints, appellant, by written order dated January 24, 1978, was directed by his supervisor to undergo an eye examination at City Hospital. Appellant did submit to an eye examination as ordered. However, he refused to sign an authorization permitting disclosure of the results of this examination to the Emergency Medical Service, his appointing authority.

It is clear from the record that at the time of the January 24 order, the appointing authority had a reason to at least question appellant's vision. The purpose of the

order was clear—to provide the appointing authority with the necessary information to determine whether appellant met the "required vision standards." Since appellant refused to sign the disclosure authorization, he effectively thwarted the underlying purpose of the order. This literal compliance with the order, when viewed in contradistinction with the subversion of its obvious purpose, does not warrant a reversal of the Commission's determination that appellant failed to comply with the order. This conclusion is even more compelling when we consider that signing the disclosure authorization is a condition of employment in the classified service. Appellant's second point is baseless.

Appellant next contends that the Commission erred in upholding his dismissal based upon his alleged appropriation of City property for the reason that the only evidence supporting the charge was either obtained by an illegal search of appellant's residence or was a product of that search. Appellant argues that such evidence is inadmissible and, therefore, not competent and substantial.[1]

Appellant lived with his mother in a flat or apartment above a store-front. On February 16, 1978, three St. Louis Police Officers went to this residence to investigate a report that appellant had City property stored there. The officers observed a stretcher and other hospital supplies through a window. They then spoke to appellant and sought permission to search the residence. It is undisputed that the officers had no search warrant. Appellant surreptitiously tape recorded the conversation between himself and the officers. After some discussion, appellant consented to the search and the incriminating evidence was seized. Appellant now contends that his consent was not voluntary, making the search illegal and the seized evidence inadmissible.

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. This protection applies to the states through the due process clause of the Fourteenth Amendment. *Mapp v. Ohio,* 367 U.S. 643, 654–55, 81 S.Ct. 1684, 1691–92, 6 L.Ed.2d 1081 (1961); *State v. Witherspoon,* 460 S.W.2d 281, 283–84 (Mo.1970); *State v. DuBose,* 617 S.W.2d 509, 513 (Mo.App.1981). It is undisputed in the instant case that the officers had not obtained a search warrant for appellant's residence. It is axiomatic that all searches without a valid warrant are per se unreasonable unless shown to be within one of the exceptions to the rule that a search must rest upon a valid warrant, and the burden is on the State to show that the search comes within an exception. *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *State v. Olds,* 603 S.W.2d 501 (Mo. banc 1980). Among the exceptions are searches with consent voluntarily given, uninduced by fraud or coercion, express or implied, and the consent cannot merely be an acquiescence to lawful authority. *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *State v. DuBose,* 617 S.W.2d at 513.

*Schneckloth v. Bustamonte* is the seminal case on the issue of consent. The court there held that "the question whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." *Schneckloth v. Bustamonte,* 93 S.Ct. at 2047–48. This court in *State v. Rush,* 497 S.W.2d 213 (Mo.App. 1973), articulated some of the factors impacting on voluntariness:

"In determining whether there is a voluntary consent to search, the courts consider the totality of the circumstances and give due consideration to a variety of factors from which it may be reasonably concluded that there was or was not consent. No hard and fast rule can be laid down. This determination hinges upon

---

1. In view of the conclusion we reach upon this point, we do not reach the argument of respondent that evidence obtained through a warrantless search is not excludable from an administrative agency hearing regardless of Fourth and Fourteenth Amendment protections.

many factors including but not limited to the number of officers present, the degree to which they emphasized their authority, whether weapons were displayed, whether the person was already in police custody, whether there was any fraud or misleading on the part of the officers, and the evidence as to what was said and done by the person consenting."

*State v. Rush,* 497 S.W.2d at 215.

■ Upon considering the totality of the circumstances in the record before us, we conclude that the appellant voluntarily consented to the search of his residence and the seizure of the City equipment and supplies. The transcript of appellant's tape recording shows that the officers never placed appellant in police custody or under arrest. In fact, he was told "We're not here to arrest you." Nothing in the record indicates that weapons were displayed or that a show of force was made. Although appellant was initially told that the officers had a search warrant, he knew within seconds that this was not true, the officers admitted they would have to get a warrant if appellant did not consent to a search. The officers stressed that all they wanted was to talk with appellant and to retrieve the City property observed through the window. The conversation was brief (2½ pages of the transcript of the record). In the middle of the conversation, appellant stated, "All right. I'll get some clothes on. I'll show you the stretcher." Under the totality of circumstances in this case, it is clear that the appellant's consent to the search was voluntary. The evidence seized pursuant to the consensual search was properly considered by the appointing authority.

The search of appellant's residence turned up numerous items of City property. These items included fire extinguishers, Robertshaw resuscitators, air tanks, gauze bandages, stretchers, splints and spinal boards. Some of these items and other assorted hospital supplies were in unopened crates or boxes addressed to City Hospital Ambulance Emergency Medical Service, 1405 Carroll St., St. Louis, Missouri. Appellant admitted that he stored City equipment and supplies at his residence, contending that in case of a shortage he would have access to necessary supplies. At one time appellant had keys to the equipment and supply rooms. The record showed that the City had two such store rooms and that they were ample to hold all the necessary supplies for the ambulance service. Appellant's two supervisors testified at the hearing that under no condition was he authorized to store any ambulance service property at his home. The appointing authority's dismissal of appellant in part on the basis of the finding that he had appropriated and stored City property at his residence without authorization is within the agency's discretion and is supported by competent and substantial evidence. The Commission properly upheld such a finding. Appellant's third point has no merit.

Appellant's next point on appeal is that the Commission erred in upholding his dismissal based upon his unauthorized and improper treatment of patients. The appointing authority cited two examples where the treatment rendered to patients by appellant exceeded the authority of an employee classified as an EMT I.

■ The first event occurred at 1716 Carver Lane in St. Louis where appellant and his ambulance team were called to assist the victim of a gunshot wound. The record showed that the appellant admitted to making at least two efforts at starting an IV (Intravenous injection) on the patient. Appellant's team member on the trip collaborates this fact. It is undisputed that under appellant's City job classification of EMT I, appellant was *not* authorized to initiate IV's on patients. This treatment is reserved for EMT II's and then only "on order of physician." It is also undisputed that no physician gave such an order at the Carver Lane incident. Appellant's own admission to initiating the IV's is conclusive on this point. His conduct clearly was in direct violation of his EMT I job description. This fact alone is competent and substantial evidence to support the appointing authority's finding that appellant functioned in an improper and unauthorized manner to the detri-

ment of patients and the Service. We need not discuss the second incident since it is merely cumulative in nature. The point has no merit.

Appellant's next point on appeal is that the Commission erred in upholding his dismissal based upon his poor work attitude and deficient relationships because this ground is unsupported by competent and substantial evidence.

Appellant contends that the only evidence in the record to support this ground for dismissal is the hearsay testimony of the Director of the Emergency Medical Service, Mrs. Hill, as follows:

"A supervisor in the EMS office received calls from the Police Department from officers who objected to the attitude of Mr. Jarrett, also from the fire department. At one time there was a large crowd of people who came to EMS headquarters for Mr. Jarrett as to the way he treated them when their relative was hit by an automobile or some such incident."

Admittedly this is inadmissible hearsay. However, we disagree with appellant that the record is devoid of any other evidence concerning appellant's poor work attitude.

■ Earlier in this opinion we discussed appellant's refusal to sign the required disclosure authorization to allow the appointing authority access to his eye examination results. Appellant's actions in obtaining the eye examination fulfilled the literal requirement of the order. However, his refusal to sign the required disclosure authorization utterly defeated the purpose underlying the order itself. Such action reasonably can be viewed as uncooperative and suggests an attitude of blatant disregard if not defiance of authority. Appellant's unauthorized appropriation and storage of City property at his residence reasonably demonstrates a similar disregard of authority. Dr. Wettach, the Service's Medical Director, testified that appellant was resistant to constructive criticism, unresponsive to counseling and "that he really was a free spirit." Moreover, appellant admitted at the hearing that there had been personality clashes with other employees and conflicts with police officers on various assignments.

This evidence is competent and substantial and supports the appointing authority's grounds for dismissing appellant for a "poor work attitude" and deficiencies in his relationships with his fellow workers, the police and the public to the prejudice of the Service. Appellant's point has no merit.

Appellant's final point on appeal is that the Commission erred in the course of the hearing by placing the burden of proof on appellant rather than upon the appointing authority and by generally indicating its predisposition to decide the case against appellant. After a review of the whole record before us, we find this point without merit.

■ Appellant requested a hearing before the Civil Service Commission to respond to his suspension and dismissal. The Commission conducted such a hearing on three different days over three months producing a record in excess of 300 pages. Appellant and the appointing authority were allowed to present witnesses of their choice. Moreover, the Commission admitted into evidence tape recordings surreptitiously made by appellant. The specific statements made by the Commissioners at the hearing, which appellant contends manifest their bias against appellant's case, are clearly taken out of context and do not support appellant's claim. A reading of the whole record shows that appellant had a fair and impartial hearing.

Although not raised by appellant, there is one further point which needs to be addressed. Section 536.090, RSMo 1978, requires that in every contested case the decision of the administrative agency "shall include or be accompanied by findings of fact and conclusions of law. The findings of fact shall be stated separately from the conclusions of law and shall include a concise statement of the findings on which the agency bases its order." In this case, the order of the Civil Service Commission was dated May 29, 1979. It did not include nor was it accompanied by any semblance of

findings of fact or conclusions of law. Nevertheless, appellant, to preserve his right of appeal, immediately filed his petition for review in the Circuit Court. The record before us reflects that as late as March of 1980, counsel for appellant continued to communicate with the Assistant City Counsellor who represented the Civil Service Commission in an effort to obtain findings and conclusions. Only after filing a motion with the Circuit Court were his efforts successful and then, the "concise statement of the findings on which the Agency bases its order" consisted merely of a xeroxed copy of the charges given to appellant together with his notice of dismissal.

The Supreme Court has directly addressed this type of situation and clearly stated:

"An agency's determination of findings is not a separate function from its decision in a case. The agency's findings of fact and conclusions of law are an essential part of and are the basis for its decision. The two cannot be separated, nor can the agency put the cart before the horse, as was done in this case, by making a decision and then later making findings of fact and conclusions of law which will support that decision."

*Stephen & Stephen Properties, Inc. v. State Tax Com'n,* 499 S.W.2d 798, 804 (Mo.1973).

As stated, appellant herein does not complain of the timeliness nor the form of the findings of fact and conclusions of law filed. We have determined that non-compliance with the mandate of § 536.090, RSMo 1978, is not jurisdictional. In *Missouri U. Meth. Retire. Homes v. State Tax Com'n,* 522 S.W.2d 745 (Mo.1975), an untimely filing of findings and conclusions was excused because the appellant had suffered no prejudice, other than delay. The Supreme Court also noted the futility involved in remanding the case to the administrative agency resulting in a mere recommencement of the entire review process. We are constrained to follow this decision of the Supreme Court of Missouri.

Nevertheless, we are not inclined to ignore the flagrant disregard of the mandate of the statute and the resultant prolongation of this litigation. Following the precedent established by this court in *Brown v. Alberda,* 579 S.W.2d 718, 721 (Mo.App.1979), we hold the effective date of appellant's discharge to have been April 4, 1980, the date on which the findings of fact and conclusions of law were filed with the Circuit Court and delivered to appellant.

Affirmed.

SNYDER, P.J., and DOWD, J., concur.