**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Lyndall Clarence SHIVE,
Defendant-Appellant.**

**No. 12101.**

Missouri Court of Appeals,
Southern District,
Division One.

Sept. 18, 1981.

Motion for Rehearing or to Transfer to
Supreme Court Overruled and
Denied Oct. 8, 1981.

John D. Ashcroft, Atty. Gen., Brian P. Seltzer, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

David R. Fielder, Fielder, Jones & Conklin, Springfield, for defendant-appellant.

GREENE, Presiding Judge.

Defendant, Lyndall Clarence Shive, was charged with first degree robbery, § 569.-020,[1] jury-tried and convicted. The jury recommended a sentence of 22 years, which sentence was later raised to 30 years by the trial court after a determination that defendant was a persistent offender. This appeal followed.

On appeal, defendant contends that the trial court erred in 1) imposing an extended term under the Persistent Offender Act, 2) denying defendant's motion to suppress in-court identification of defendant by three witnesses, and 3) overruling defendant's pretrial motion to dismiss, based on violation of the Speedy Trial Act.

Evidence in the record sufficient to support the jury verdict was that on February 6, 1980, Noveta Keys was an employee of a retail store called Suede-Master, where leather coats were sold, cleaned and re-

---

1. All references to statutes are RSMo 1978.

paired. The store is located in Tiffany Square in Springfield, Missouri. A man wearing a cowboy hat and split cowhide coat with fringe on it entered the store, pointed a pistol at Mrs. Keys and forced her to go to the back room of the store. Mrs. Keys then heard a second person enter the store and heard a second male voice but was unable to see him. She was then handed a ski mask, told to put it on backwards over her head, and to lie down on the floor on her stomach at which time, they tied her hands and feet. While Mrs. Keys was lying on the floor, she heard the rustling of what sounded like plastic and the sound of coat hangers being moved against a metal rack. After the robbers had left, Mrs. Keys was able to free her hands which enabled her to answer the telephone in the back room and inform her husband what had happened at the store. Her husband then called the police.

After the police came, an investigation revealed that a number of valuable leather coats as well as the currency from the store's cash register were missing. Some plastic trash bags were also found in the store which had not been there before the robbery. At trial, Mrs. Keys identified defendant as the robber.

Witness Michelle Haugh testified that on the day in question, she saw two men loading full trash bags into a van parked near the store. She identified defendant as one of the two men. Witness Joan Luna testified that she saw two men park a pickup truck near the Suede-Master store at about 5:05 p. m. on February 6, 1980. She identified defendant as the passenger in the truck and said he was wearing a cowboy hat and a brown suede jacket with fringe on it.

### THE EXTENDED TERM ISSUE

■ The evidence on this issue shows that defendant, prior to the date of the robbery, had been convicted of four felonies, two of which were robbery in the first degree, and that he was incarcerated in the penitentiary for each of those crimes. In the face of his substantial criminal record, defendant contends that extended term punishment cannot be given to a person convicted of first degree robbery under Missouri law. He is wrong. First degree robbery is a class A felony under the Criminal Code. Section 557.036.3(2)(b) provides that if the jury returns a guilty verdict against a defendant in a class A felony case, and declares a term of imprisonment, the trial court may extend the punishment declared by the jury to any sentence authorized by law for a class A felony, if it has first found that defendant is a persistent or dangerous offender. The trial court found defendant to be a persistent offender. This statutory section authorized the extended term in this case. *State v. Byrnes*, 619 S.W.2d 791 (Mo. App.1981); *State v. Manis*, 614 S.W.2d 771, 772 (Mo.App.1981). The point is denied.

### THE IDENTIFICATION ISSUE

■ In this point, defendant contends that the trial court erred in denying his motion to suppress in-court identification of defendant by witnesses Keys, Luna and Haugh for the reason that their in-court identification was based on impermissible pretrial photographic lineups in that all of the photographs shown to the witnesses prior to trial, with the exception of defendant's photograph which depicted him standing in front of a height chart, depicted individuals in front of a neutral background, thus causing a likelihood of irreparable misidentification. There is no merit to this claim.

The record does not support this contention. No photographs were ever shown to witness Michelle Haugh. Mrs. Keys was shown eight to ten photographs by the police about three weeks after the robbery. No suggestive comments were made to Mrs. Keys by the police before or while she selected defendant's photograph as a picture of the man who had robbed her. Mrs. Keys was standing within three feet from her assailant at the time of the robbery, and based on the distinct profile of the robber and the opportunity she had to observe him, made the identification of defendant's photograph, and later identified defendant at time of trial. Mrs. Keys did not remember

what any of the photographic backgrounds were in any of the pictures.

Mrs. Luna was shown a photographic display of at least seven photographs approximately four weeks after the robbery. No suggestive comments were made to her by the police. She picked out defendant's picture as the man she saw outside the Suede-Master store minutes before the robbery. She recognized him by his "prominent" cheekbones and hair. She believed that several of the pictures had a height measurement chart in the background. She also identified defendant at time of trial.

The record conclusively establishes that all three witnesses based their in-court identification on their own independent recollection of what the robber looked like at the scene of the crime. Defendant's claim of error on this point is completely speculative and devoid of factual support. This being so, the point is not reviewable. *State v. McMillan*, 593 S.W.2d 629, 633 (Mo.App. 1980).

## LACK OF SPEEDY TRIAL ISSUE

Defendant was found guilty by a jury on November 11, 1980. He filed a motion for new trial on December 5, 1980. The motion did not contain any allegation of error due to a lack of a speedy trial. On December 17, 1980, defendant filed a pro se document entitled "Amended Motion for New Trial Filed by Defendant." In this document, defendant charged the trial court erred in denying defendant a speedy trial as requested, in that he was arraigned in circuit court on March 21, 1980 and not tried until November 10, 1980. The second motion was untimely filed, was a nullity, and preserved nothing for appellate review. *State v. Berry*, 609 S.W.2d 948, 951 (Mo. banc 1980). Plain error review is not justified under Rule 29.12 V.A.M.R., as the alleged error did not rise to level of manifest injustice or a miscarriage of justice.

The record indicates that the delay of approximately seven months between the time of arraignment and time of trial was occasioned by defendant's involvement in other crimes (three other criminal trials involving defendant in Greene County between July 16, 1980 and September 15, 1980, plus a plea of guilty in Lafayette County on another felony on October 20, 1980) and his propensity of failing to get along with his attorneys (his first two lawyers withdrew and he is attacking the competence of the third).

There was substantial evidence to support the jury verdict, and we find no error, plain or otherwise.

The judgment and sentence of the trial court are affirmed.

All concur.