STATE of Missouri, Respondent,

v.

**Earl REESE, Appellant.**

No. 62266.

Supreme Court of Missouri,
En Banc.

Dec. 8, 1981.

Lee M. Nation, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Rosalynn Van Heest, Asst. Atty. Gen., Jefferson City, for respondent.

DONNELLY, Chief Justice.

Appellant, Earl Reese, was convicted of robbery in the first degree by the Circuit Court of Jackson County, Missouri, and, pursuant to §§ 558.016 and 557.036.3, RSMo 1978, the court imposed a life sentence. Following rendition of judgment and imposition of sentence an appeal was perfected to this Court.

As appellant does not challenge the sufficiency of the evidence supporting his conviction, it suffices to say that there was evidence showing appellant robbed a Kansas City service station and was hiding in the home of a girlfriend, Ms. Shekena Dabner, when he was apprehended a short time after the robbery.

Appellant first contends the trial court erred in not suppressing a revolver, coat, wallet, ski mask, and sunglasses seized without warrant by police when they arrested appellant at Ms. Dabner's home. The State does not contend that the items were seized incident to appellant's arrest, but rather pursuant to Ms. Dabner's consent to search her home. Appellant maintains the State failed to sustain its burden of demonstrating that the warrantless search was conducted with Ms. Dabner's consent. Appellant asserts that Missouri, by means of *State v. Berry*, 526 S.W.2d 92 (Mo.App.1975), has adopted the rule that "the State must show that the person consenting to search knew of the right to

refuse consent. In the case at bar, no such consent was proven."

The opinion in *Berry* does set forth the relevant considerations involved in a warrantless search case:

"The ban of the Fourth Amendment against unreasonable searches and seizures applies to the state through the due process clause of the Fourteenth Amendment. *State v. Witherspoon*, 460 S.W.2d 281, 283 (Mo.1970), but a search may be made without a warrant under one of the few, specific well-recognized exceptions to the ban. *State v. Rush*, 497 S.W.2d 213, 215 (Mo.App.1973). A search conducted pursuant to a valid consent is constitutionally permitted and is 'wholly valid.' *Schneckloth v. Bustamonte*, 412 U.S. 218, 222, 93 S.Ct. 2041, 2045, 36 L.Ed.2d 854 (1973). In relying upon consent to justify the lawfulness of a search, the state has the burden of proving that the consent was, in fact, 'freely and voluntarily given.' *Schneckloth, supra*, 93 S.Ct. 2041, 2045.

"Whether a consent to search was in fact voluntary or was the product of duress or coercion, express or implied, is to be determined from the 'totality of all the surrounding circumstances.' *Schneckloth, supra*, at 2047. In situations where the police have some evidence of illicit activities, but lack probable cause to arrest or search, the search authorized by a valid consent may be the only means of obtaining important and reliable evidence. *Schneckloth, supra*, 93 S.Ct. at 2048.

"To show consent the state must show more than mere acquiescence to a claim of lawful authority. *State v. Rush, supra*, at 215. While *a person's knowledge of the right to refuse consent is a factor to be taken into account, as part of the circumstances, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent. Schneckloth, supra*, 93 S.Ct. at 2059. [Emphasis added].

"In determining whether there is a voluntary consent to search, the court may consider such factors as the number of officers present, the degree to which they emphasized their authority, whether weapons were displayed, whether the person was already in police custody, whether there was any fraud on the part of the officers, the acts and statements of the consenter, and other matters comprising 'the totality of the circumstances.' *State v. Rush, supra*, at 215."

526 S.W.2d at 98.

■ Thus, contrary to appellant's assertion, the trial court was not required to find that Ms. Dabner knew she could refuse the police permission to search, but whether from the "totality of all the surrounding circumstances," Ms. Dabner's consent was, in fact, voluntary.

Relevant to this inquiry is the testimony of Ms. Dabner and Hadley Cutburth, one of the arresting officers.

Ms. Dabner testified that three or four police officers came to her door, that she did not consent to a search, but was forced to permit the police to enter because they threatened to arrest her and put her child in a detention home. She conceded that she signed a consent to search form, but testified she did not know what the form was. She also testified she believed she had a right to refuse to permit the police to search.

Officer Cutburth's testimony contradicted most of Ms. Dabner's testimony. He testified that after he asked Ms. Dabner if she cared whether the police looked inside, she stepped aside allowing them to enter. He denied that Ms. Dabner was ever threatened with arrest or loss of her child if she refused.

■ We conclude that the trial court did not err in determining that the "totality of the circumstances" disclosed Ms. Dabner's consent to the search.

■ Appellant next maintains the trial court erred in overruling his objection to quash the jury venire because blacks were substantially underrepresented on the panel. Appellant concedes that we "have been reluctant to admit the existence of system-

atic exclusion * * * absent a statistical showing of such exclusion." *See State v. Dowe*, 432 S.W.2d 272 (Mo.1968). *See also State v. Ross*, 530 S.W.2d 457 (Mo.App. 1975). Our "reluctance" continues unabated. As the record contains evidence insufficient to support appellant's contention, the point is without merit.

■ Appellant's third point concerns the admission into evidence of photographs of Ms. Dabner's home, of items found in her home during the search and of her automobile. Appellant contends that despite his request for discovery of the photographs filed pursuant to Rule 25.03(A)(6), the fact that the photographs were not produced by the State until trial and the trial court's failure to grant even a continuance "irreparably" damaged appellant's defense. We fail to see how the trial court's ruling amounted to "fundamental unfairness" to appellant, *State v. Smothers*, 605 S.W.2d 128, 131 (Mo. banc 1981), since the items seized in Ms. Dabner's home were already admitted into evidence, had been the subject of a motion to suppress, and identification of her home and automobile were not critical issues. The trial court did not abuse the discretion afforded it under Rule 25.16.

Nor did the trial court err in admitting testimony relating to the photographs of the items found in Ms. Dabner's residence (money, a ski mask, and sunglasses). Appellant claims the relevance of these items was not shown.

■ As to the sunglasses and ski mask, we are limited to a review of whether the evidence relating to these items amounted to plain error, Rule 29.12(b), because appellant failed to preserve the issue as to these items by raising it in his motion for new trial. Rule 29.11(d). We do not believe that the admission of such evidence amounted to "manifest injustice" or a "miscarriage of justice." Rule 29.12(b); *State v. Nauman*, 592 S.W.2d 258, 260 (Mo.App. 1979).

■ As to the money found in Ms. Dabner's home, one of the arresting police officers testified that Ms. Dabner, who was aware that appellant was under arrest for robbery, led the officer to the kitchen where she handed him $38 taken from a cabinet drawer and to a closet where more money was found. It can be inferred that she knew appellant had placed the money in these places upon returning from the service station, thus making the relevance of this evidence apparent.

■ Next, appellant argues the trial court erred in admitting into evidence items seized in Ms. Dabner's home contending that his warrantless arrest was illegal, citing *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), and therefore that the items seized pursuant to that arrest should have been excluded by reason of "well defined exclusionary rules * * *." We express no opinion as to the applicability of *Payton*, decided after the trial in this case. It suffices to say that the items, as previously noted, were seized pursuant to a search conducted with the consent of Ms. Dabner, not as incident to the arrest, lawful or unlawful, of appellant. The items could not be considered "fruit of the poisonous tree" when the record reveals that they were seized *before* the police discovered appellant hiding in the house. This point is without merit.

Finally, appellant presents several challenges to the trial court's imposition of an extended term of imprisonment under § 558.016, RSMo 1978, which provided:

"1. The court may sentence a person who has pleaded guilty to or has been found guilty of a class B, C, or D felony to an extended term of imprisonment if it finds the defendant is a persistent offender or a dangerous offender.

"2. A 'persistent offender' is one who has been previously convicted of two felonies committed at different times and not related to the instant crime as a single criminal episode.

"3. A 'dangerous offender' is one who:

"(1) Is being sentenced for a felony during the commission of which he knowingly murdered or endangered or threatened the life of another person or knowingly inflicted or attempted or threatened

to inflict serious physical injury on another person;  and

"(2) Has been previously convicted of a class A or B felony or of a dangerous felony.

"4. The total authorized maximum terms of imprisonment for a persistent offender or a dangerous offender are:

"(1) For a class B felony, a term of years not to exceed thirty years;

"(2) For a class C felony, a term of years not to exceed fifteen years;

"(3) For a class D felony, a term of years not to exceed ten years."

Appellant apparently contends that if he received the life sentence as a "persistent offender" under § 558.016 (and there is a statement in the record by the trial court that it "finds that defendant is a persistent offender") then the extended sentence was imposed unlawfully under §§ 558.021 and 558.016(2) because there were not *two* previous felonies mentioned in the information as those sections require.

■ We note, however, that although the trial court did unnecessarily refer to appellant as a "persistent offender", the trial court also found that appellant was a "dangerous offender"; that the record supports the imposition of the life sentence under the "dangerous offender" provision of § 558.016 as the information recited that appellant had been previously convicted of first degree robbery, a class A felony;  and that there was a finding by the trial court that appellant threatened the life of the victim in this case. *See* §§ 558.016(3); 558.-021.

■ Next, appellant contends the imposition of an extended term of imprisonment placed him in double jeopardy in violation of the Fifth Amendment to the United States Constitution. The contention is without merit. An accused may not receive an extended or enhanced punishment not authorized by the legislature. *Ex parte Lange,* 85 U.S. (18 Wall.) 163, 21 L.Ed. 872 (1874). However, the imposition of extended punishment on a "dangerous offender" is clearly and specifically authorized by the

General Assembly. It is an enhancement statute and does not violate the constitutional guarantee against multiple punishment.

■ Lastly, appellant maintains that since § 558.016, RSMo 1978, referred only to class B, class C, and class D felonies, his sentence could not be enhanced under that section as he was convicted of first degree robbery, a class A felony. This argument ignores § 557.036.3, RSMo 1978, which provides:

"3. If the jury returns a verdict of guilty and declares a term of imprisonment as provided in subsection 2 of this section, the court shall proceed as provided in subsection 1 of this section except that any term of imprisonment imposed cannot exceed the term declared by the jury unless:

"(1) The term declared by the jury is less than the authorized lowest term for the offense, in which event the court cannot impose a term of imprisonment greater than the lowest term provided for the offense;  or

"(2) The defendant is found to be a persistent or dangerous offender as provided in section 558.016, RSMo, in which case:

"(a) If he has been found guilty of a class B, C, or D felony, the court shall proceed as provided in section 558.016, RSMo;  or

"(b) *If he has been found guilty of a class A felony, the court may impose any sentence authorized for a class A felony.*" [Emphasis added].

As first degree robbery, a class A felony, carries with it a possible punishment of life imprisonment, § 558.011.1(1), RSMo 1978, the trial court was authorized by § 557.036.-3(2)(b) to impose the extended sentence. *See State v. Shive,* 622 S.W.2d 769 (Mo. App., 1981).

The judgment is affirmed.

All concur.