

# *In the*
# *Missouri Court of Appeals*
## *Western District*

| | | |
|---|---|---|
| **STATE OF MISSOURI,** | ) | |
| | ) | |
| **Respondent,** | ) | **WD86183** |
| | ) | |
| **V.** | ) | **OPINION FILED:** |
| | ) | **NOVEMBER 5, 2024** |
| **SOLOWMENN JAMES WARREN,** | ) | |
| | ) | |
| **Appellant.** | ) | |

**Appeal from the Circuit Court of Cole County, Missouri**
The Honorable Jon E. Beetem, Judge

Before Division One:  Lisa White Hardwick, Presiding Judge, Cynthia L. Martin, Judge
and Janet Sutton, Judge

Solowmenn James Warren ("Warren") appeals from the trial court's judgment

convicting him of the class A misdemeanor of domestic assault in the fourth degree, in

violation of section 565.076;[1] the class D felony of kidnapping in the second degree, in

violation of section 565.120; the class C felony of unlawful possession of a firearm, in

violation of section 571.070; the class E felony of unlawful use of a weapon, in violation

of section 571.030; and three counts of the unclassified felony of armed criminal action,

in violation of section 571.015.  Warren argues that the trial court committed error by

---

[1]All statutory references are to RSMo 2016 as supplemented through September
22, 2022, unless otherwise indicated.

enhancing his sentence for the class C felony of unlawful possession of a firearm using the sentencing range authorized for a class B felony pursuant to sections 558.016.1 and .7 because the offense had already been enhanced from a class D to a class C felony under section 571.070. Warren also requests plain error review of the trial court's alleged failure to swear in the jury throughout trial. Finding no error, we affirm.

## Factual and Procedural History[2]

Warren does not challenge the sufficiency of the evidence to support his convictions. In September of 2022, Warren and Victim were living in an apartment in Jefferson City, Missouri. During the evening of September 21, 2022, Warren was behaving distantly and repeatedly asked Victim if she wanted him to leave. Victim told Warren that she wanted him to be gone by the time she returned from work the following day.

At around 12:50 a.m. on September 22, 2022, Victim began getting ready for work. Victim was in her kitchen when she turned to see Warren pointing a gun at her. Warren ushered Victim into an adjoining room at gunpoint where he berated and insulted her. Warren demanded Victim take him to another location. Victim refused and told Warren that she needed to go to work but Warren continued to demand Victim take him somewhere else. Victim again refused and told Warren that he was just going to have to

---

[2]"On appeal from a jury-tried case, we view the facts in the light most favorable to the jury's verdict." *State v. Putfark*, 651 S.W.3d 869, 874 n.2 (Mo. App. W.D. 2022) (quoting *State v. Peal*, 393 S.W.3d 621, 623 n.1 (Mo. App. W.D. 2013)).

2

kill her. Warren cocked the gun he was holding and said "[y]ou think I'm playing with you[?] I'll freaking kill you right now."

After Victim reluctantly agreed to take Warren "somewhere," he began packing his belongings. While Warren was packing, Victim left a handwritten note in the apartment that said: "If I am dead, [Warren] did it at 1:45 and tell my kids I love them." Victim and Warren then left the apartment and sat in Victim's car. After arguing over the spare key to Victim's apartment, Victim told Warren he could stay in her apartment until she finished her shift at work. Warren returned to the apartment and Victim left for work.

At work, Victim "blocked out" the events that had just occurred and worked her shift as she normally would. Towards the end of her shift, Victim became worried for her daughter's safety because her daughter had a key to the apartment. Victim told her boss about what had happened that morning. Victim then called the police at her boss's instruction. Once law enforcement arrived at Victim's apartment, they breached the front door and discovered Warren standing at the end of the hallway. Warren initially fled into the apartment's bedroom but after a few seconds voluntarily surrendered to police.

Warren was charged with the class A misdemeanor of domestic assault in the fourth degree (Count I), the class D felony of kidnapping in the second degree (Count II), the class C felony of unlawful possession of a firearm (Count III), the class D felony of failing to register as a sex offender as a second offense (Count IV), the class E felony of unlawful use of a weapon (Count VI), and three counts of the unclassified felony of armed criminal action (Counts V, VII, and VIII). The charge of unlawful possession of a firearm, Count III, was charged as a class C felony instead of a class D felony because

3

the statute for that offense, section 571.070, permits an enhanced charge if an offender "has been convicted of a dangerous felony as defined in section 556.061." Section 571.070.2. The State identified Warren's 2021 conviction of statutory rape in the second degree as the dangerous felony that supported enhancing his charged offense from a class D felony to a class C felony.

In an amended information, the State notified Warren that it intended to seek enhanced terms of imprisonment for each of Warren's classified felony charges (Counts II, III, IV, and VI) pursuant to section 558.016 on the basis that Warren is "a prior offender under [s]ection 558.016" and "a persistent offender . . . under [s]ections 558.016 and 557.036." Section 558.016.1(1), read in combination with section 558.016.7, permits a trial court to impose an enhanced sentence at the authorized term of imprisonment for the next highest felony classification for a charged offense if the convicted offender is a persistent offender defined by section 558.016.3 as "one who has been found guilty of two or more felonies committed at different times."[3] The amended information relied on Warren's prior convictions of felony domestic assault in 2009 and of felony escape from confinement in 2001 to argue that Warren was a "persistent offender" whose sentences for classified felony convictions should be enhanced to the authorized term of imprisonment for the next highest felony classification.

_____

[3]Section 558.016.1(1), read in combination with section 558.016.7, also permits a trial court to impose an enhanced sentence at the authorized term of imprisonment for the next highest felony classification for a charged offense if the convicted offender is a dangerous offender as defined by section 558.016.4.

4

Before trial, Warren filed a motion to strike the State's proposed sentencing enhancement for Count III, the charge for unlawful possession of a firearm.[4] Warren argued that he had been charged with the class C felony of unlawful possession of a firearm under section 571.070.2 instead of a class D felony based on his prior commission of a dangerous felony and that this qualified as an enhancement of his term of imprisonment under section 558.016.1(2). Warren argued he could not also be subject to an enhanced term of imprisonment pursuant to section 558.016.1(1) and .7 because section 558.016 as amended effective January 1, 2017, prohibits the "double enhancement" of sentences. The trial court denied Warren's motion.

Following a trial, the jury found Warren guilty on all counts except for Count IV (failure to register as a sex offender as a second offense). The trial court entered a judgment of conviction and sentence ("Judgment"). Warren was sentenced to one year in the Cole County jail on his misdemeanor conviction (Count I), and to imprisonment in the Missouri Department of Corrections on the remainder of his felony convictions. The trial court sentenced Warren to ten years on Count II, fifteen years on Count III, five years on Count V, seven years on Count VI, five years on Count VII, and five years on Count VIII. Warren's sentences on Counts I-III and VI were set to run concurrently with each other while his sentences on Counts V, VII, and VIII were set to run concurrently with each other but consecutively to the sentences on Counts I-III and VI. In total,

---

[4]In Warren's Motion to Strike he presented the same argument to challenge the State's proposed enhancement of the term of imprisonment as to Count IV. Because the jury found Warren not guilty on Count IV further discussion of that Count is unnecessary.

Warren was sentenced to a term of imprisonment of twenty years with one year to be served in the Cole County Jail and nineteen years to be served in the Department of Corrections.

The sentences imposed for each of Warren's classified felony convictions (Counts II, III, and VI) were the highest permitted within the authorized range of imprisonment for an offense that was one felony class higher than the classification of offense for which Warren was found guilty as authorized by sections 558.016.1(1) and .7.

Warren appeals.

## Analysis

Warren raises two points on appeal. Point One argues that the trial court erred in imposing an enhanced sentence for Warren's conviction of the class C felony of unlawful possession of a firearm (Count III) in the range authorized for a class B felony. In Point Two, Warren claims the trial court plainly erred by failing to administer the oath and swear in the jury at any point during trial.

***The trial court did not err in imposing an enhanced sentence for Warren's conviction of unlawful possession of a firearm in the range authorized for class B felonies. (Point One)***

In his first point on appeal, Warren argues that the trial court erred by enhancing the sentence for his conviction of the class C felony of unlawful possession of a firearm to a sentence authorized for a class B felony pursuant to sections 558.016.1(1) and .7. Warren argues: that his offense had already been enhanced from a class D to a class C felony pursuant to section 571.070.2; that enhancement of his offense under section

6

571.070.2 qualifies as a sentencing enhancement authorized by section 558.016.1(2);[5] and that the trial court erroneously enhanced his sentence a second time when it also applied sections 558.016.1(1) and .7 to sentence him in the authorized range of imprisonment for a class B felony. Warren argues that the amendments to section 558.016 which became effective on January 1, 2017, prohibit the State from seeking "double enhancement" of sentences under more than one subsection of section 558.016.1.

Warren's point on appeal requires us to interpret section 558.016 as amended effective January 1, 2017. "Statutory interpretation is an issue of law reviewed *de novo*." *State v. Yount*, 642 S.W.3d 298, 300 (Mo. banc 2022) (quoting *State v. Richey*, 569 S.W.3d 420, 423 (Mo. banc 2019)). "This Court's primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute at issue." *Genesis Sch. Inc. v. Mo. State Bd. of Educ.*, 688 S.W.3d 242, 253 (Mo. App. W.D. 2024) (quoting *Black River Motel, LLC v. Patriots Bank*, 669 S.W.3d 116, 122 (Mo. banc 2023)). We ascertain the General Assembly's intent "by considering the plain and ordinary meaning of the terms and give effect to that intent if possible." *Neil v. St. Louis Cnty.*, 688 S.W.3d 268, 274 (Mo. App. E.D. 2024) (quoting *Wilmoth v. Dir. of Revenue*, 669 S.W.3d 102, 110 (Mo. banc 2023)).

---

[5]In his opening brief, Warren does not specifically refer to section 558.016.1(2) and instead generally (and non-specifically) argues that the enhancement of his charge of unlawful possession of a firearm from a class D to a class C felony pursuant to section 571.070.2 is an example of a "statute-specific enhancement" authorized by section 558.016.1. The phrase "statute-specific enhancement" is the same phrase Warren used to describe section 558.016.1(2) in his motion to strike filed with the trial court to raise his concern about double sentencing enhancement as well as in his reply brief. We attribute the same meaning to the phrase as used in his opening brief.

Since its enactment in 1977, effective January 1, 1979, section 558.016 has expressed a legislative intent "to impose longer sentences on defendants with felony records and to seek to deter subsequent crimes by the same offender." *State v. Arbeiter*, 664 S.W.2d 566, 570 (Mo. App. E.D. 1983) (citing *State v. Garrett*, 435 S.W.2d 662, 663-64 (Mo. 1968)). Since its amendment in 1980, section 558.016 has consistently served this objective in two ways: (1) by authorizing a trial court to determine sentencing in lieu of a jury if one is a "prior offender," *State v. Paxton*, 140 S.W.3d 226, 232 (Mo. App. S.D. 2004) (observing that "section 558.016 permits the court to sentence a person . . . if the court finds the defendant is a prior offender"); and (2) by authorizing the trial court to impose an enhanced term of imprisonment for one who is a "persistent" or "dangerous" offender. Since 1980, section 558.016 has consistently defined a "prior offender" as one who has been found guilty of one felony; a "persistent offender" to include one who has been found guilty of two or more felonies committed at different times; and a "dangerous offender" as one who has been found guilty of a class A or B felony or of a dangerous felony, or who is being sentenced for a felony during the commission of which the offender engaged in egregious conduct described in the statute.

Though section 558.016 has, since its inception, authorized a trial court to determine and impose an enhanced term of imprisonment for persistent or dangerous offenders, that general authority is constrained by the settled principle that ranges of punishment applicable to an offense must be expressly authorized by statute. "An accused may not receive an extended or enhanced punishment not authorized by the legislature." *State v. Reese*, 625 S.W.2d 130, 134 (Mo. banc 1981) (citing *Ex parte*

8

*Lange*, 85 U.S 163 (1874)).  Consistent with this settled principle, section 558.016 not only extends the general authority to a trial court to determine sentencing (in lieu of a jury) and to impose an enhanced term of imprisonment but also describes the authorized range of sentence that can be imposed in either circumstance.  Since 1990, section 558.016.1 has provided that a trial court (in lieu of a jury) can determine the sentence to be imposed on a "prior offender" pursuant *either* to section 558.011[6] *or* to the term of imprisonment authorized by the statute governing the offense.  And, since 1980, section 558.016 has provided that a trial court (in lieu of a jury) can determine and impose an enhanced term of imprisonment on persistent or dangerous offenders expressed as the range of imprisonment authorized for the class of felony that is one class higher than the class of felony of which the defendant was convicted.

Prior to the date of Warren's offenses, Section 558.016 was last amended in 2014, effective January 1, 2017.[7]  Warren argues that the 2017 amendments to section 558.016 signaled a material shift in legislative intent with respect to the authority extended to a trial court to impose an enhanced term of imprisonment on persistent or dangerous

---

[6]Since its enactment in 1977, effective January 1, 1979, section 558.011 has set forth the authorized terms of imprisonment for offenses based on their felony or misdemeanor classification.  Section 558.011 applies unless a statute describing an offense sets forth the authorized term of imprisonment for the offense.

[7]Section 558.016 was recently amended effective August 28, 2024, to add to the definition of "persistent offender" in .3 "one who has been previously found guilty of a dangerous felony as defined in subdivision (19) of section 556.061."  This amendment post-dates Warren's convictions and sentences, and is immaterial to our analysis. However, we note that as a result of the amendment, the commission of a single "dangerous felony" now qualifies an offender as both a "persistent" and a "dangerous" offender.

9

offenders.  To analyze Warren's argument, we must first understand how section 558.016

had been interpreted and applied prior to its amendment effective January 1, 2017.

The version of section 558.016 in effect prior to January 1, 2017, provided, in

pertinent part, as follows:

> The court may sentence a person who has pleaded guilty to or has been
> found guilty of an offense to a term of imprisonment as authorized by
> section 558.011 or to a term of imprisonment authorized by a statute
> governing the offense if it finds the defendant is a prior offender or a
> persistent misdemeanor offender, or to an extended term of imprisonment if
> it finds the defendant is a persistent offender or a dangerous offender.

Section 558.016.1 (Cum. Supp. 2005).  "The total authorized maximum terms of

imprisonment for a persistent offender or a dangerous offender" were specified as any

sentence authorized for a class A felony (for class A felonies), and any sentence

authorized for the felony class that is one class higher for class B, C, and D felonies.

Section 558.016.7 (Cum. Supp. 2005).

In *State v. Ewanchen*, 799 S.W.2d 607 (Mo. banc 1990), our Supreme Court held

that the plain language of section 558.016,[8] a statute designed to address recidivism,

authorized the post-conviction enhancement of a sentence based on the commission of

prior felonies even though the statute describing the offense authorized the pre-conviction

enhancement of the charged offense to a higher felony classification based on the same

prior felonies.  *Id.* at 609-610.  The Supreme Court noted that "[t]here is a straightforward

argument for applying both enhancements: the plain language of the statutes permits

---

[8]The version of section 558.016 then in effect was not materially different from
section 558.016 (Cum. Supp. 2005).

10

application of both." *Id.* at 609. In effect, the Supreme Court recognized the difference between the State's pre-conviction election to enhance a charged offense based on the commission of a prior crime and the post-conviction authority extended to a trial court by section 558.016 to impose an enhanced term of imprisonment for the offense as charged if an offender qualifies as a "persistent" or "dangerous" offender. The use of the same prior offense for both purposes was deemed permissible. *Id.*; *see also Paxton*, 140 S.W.3d at 232 (holding that "section 566.067.2 permits the court to use Defendant's prior conviction under Chapter 566 to enhance the felony of child molestation in the first degree from a class B felony to a class A felony" and does not prohibit use of the same offense to authorize a court to impose sentence in lieu of a jury pursuant to section 588.016). Relying on *Ewanchen*, this court similarly upheld the practice of using the same prior convictions to enhance the charged offense as authorized by the statute describing the offense and to qualify the offender as a "persistent offender" for purposes of authorizing the trial court to impose an enhanced term of imprisonment under section 558.016. *State v. Hayes*, 330 S.W.3d 828, 830-31 (Mo. App. W.D. 2011) (citing *Ewanchen*, 799 S.W.2d 609-10).

Warren acknowledges the holdings in *Ewanchen* and *Hayes* but argues that when the General Assembly amended section 558.016 in 2014, effective January 1, 2017, it added new categories to section 558.016.1 to describe when a trial court can impose a post-conviction enhanced term of imprisonment and placed an "or" between those categories signaling an intent to prevent the "double enhancement" of sentences

11

authorized by *Ewanchen* and *Hayes*.  As amended effective January 1, 2017, section

558.016 now provides, in pertinent part, as follows:

> 1. The court may sentence a person who has been found guilty of an offense to a term of imprisonment as authorized by section 558.011 or to a term of imprisonment authorized by a statute governing the offense if it finds the defendant is a prior offender or a persistent misdemeanor offender.  The court may sentence a person to an extended term of imprisonment if:
>
> (1) The defendant is a persistent offender or a dangerous offender, and the person is sentenced under subsection 7 of this section;
>
> (2) The statute under which the person was found guilty contains a sentencing enhancement provision that is based on a prior finding of guilt or a finding of prior criminal conduct and the person is sentenced according to the statute; or
>
> (3) A more specific sentencing enhancement provision applies that is based on a prior finding of guilt or a finding of prior criminal conduct.
>
> . . .
>
> 7. The court shall sentence a person, who has been found to be a persistent offender or a dangerous offender, and is found guilty of a class B, C, D, or E felony to the authorized term of imprisonment for the offense that is one class higher than the offense for which the person is found guilty.

The first sentence of section 558.016.1 remained materially unchanged by the 2017

amendment and continues to authorize a trial court to determine the sentence for prior

offenders in lieu of a jury.  The second sentence of section 558.016.1, section

558.016.1(1), and section 558.016.7 were also materially unchanged by the 2017

amendment and continue to authorize a trial court to enhance the term of imprisonment

imposed where a convicted prior offender is also a "persistent" or "dangerous" offender

as defined in sections 558.016.3 and .4, with the authorized range for the enhanced

punishment being any sentence authorized for one class higher felony. Notably, the authorized range of enhanced sentence for persistent or dangerous offenders described in section 558.016.7 is no longer expressed in permissive terms and now states that a court "shall" sentence a persistent or dangerous offender to the authorized term of imprisonment for the next higher felony classification for the charged offense. *Cf. Ewanchen*, 799 S.W.3d at 610 (noting that application of the version of section 588.016 then in effect "is not mandatory").

Unless Warren can demonstrate that changes to section 558.016 effective January 1, 2017, require a different conclusion, we remain bound by *Ewanchen* to hold that Warren's post-conviction sentence in the class B felony range for the class C felony of unlawful possession of a firearm, imposed in reliance on the mandate of sections 558.016.1(1) and .7, is not prohibited despite the State's pre-conviction election to enhance the felony classification for his charged offense as authorized by section 571.070.2. *See, e.g., State v. Burros*, 640 S.W.3d 825, 828 (Mo. App. 2022) (affirming imposition of enhanced term of imprisonment in the range authorized for class D felonies pursuant to sections 558.016.1(1) and .7 where offender was convicted of the class E felony of violating section 302.321.2, driving while license is suspended, even though the charged offense had already been enhanced because it was the offender's fourth or subsequent violation). This conclusion seems more than appropriate in Warren's case. Unlike *Ewanchen* where the same prior felonies were relied on both to enhance the offense charged and the authorized enhanced sentence imposed, in Warren's case the prior felony relied on to enhance his felony charge under section 571.070.2 from a class

C felony to a class D felony was his 2021 conviction of statutory rape in the first degree with a victim under the age of twelve, a dangerous felony as described in section 556.061. But the prior felonies relied on to support qualifying Warren as a "persistent offender" subject to an enhanced term of imprisonment pursuant to sections 558.016.1(1) and .7 were his 2009 conviction of felony domestic assault and his 2001 conviction of felony escape from confinement.

Warren nonetheless argues that there were "other changes" to section 558.016 that require us to reject the continued efficacy of *Ewanchen* and *Hayes*. Warren argues that the addition of subsections (2) and (3) to section 558.016.1, separated by the word "or," now require the State to select between one of the three enumerated scenarios wherein a trial court can impose an enhanced term of imprisonment. And he argues that the State failed to make this choice and instead double enhanced his sentence for unlawful possession of a firearm by insisting on application of both section 558.016.1(1) and section 558.016.1(2). Warren's argument depends on the premise that the State's pre-conviction election to enhance the charged offense of unlawful use of a firearm to a class C felony from a class D felony pursuant to section 571.070.2, is the functional equivalent of section 558.016.1(2) describing a trial court's authority to impose an enhanced term of imprisonment. Warren's premise is fundamentally and fatally flawed.

As previously noted, section 558.016.1(1) authorizes a trial court to impose an enhanced term of imprisonment on a persistent or dangerous offender but also identifies what the authorized range of enhanced imprisonment is by cross-reference to section 558.016.7. This second feature is essential, as a trial court's general authority to impose

14

an enhanced sentence is meaningless unless a statue identifies the authorized range of enhanced sentencing that can be imposed. *Reese*, 625 S.W.2d at 134 (citing *Ex parte Lange*, 85 U.S. 163).

This foundational observation is critical to proper construction of sections 558.016.1(2) and (3). Though, like section 558.016.1(1), both sections 558.016.1(2) and (3) generally describe when a trial court has the authority to impose an enhanced term of imprisonment, in contrast to section 558.016.1(1), neither section 558.016.1(2) nor (3) identifies the authorized range of enhanced imprisonment that can be imposed. Because we assume that the General Assembly does not enact meaningless provisions in a statute, we are required, therefore, to construe sections 558.016.1(2) and (3) in a manner that refers to a statute or statutes that express the authorized range of enhanced imprisonment a trial court can impose if it is relying on the general authority to enhance sentencing described in either subsection. *Bachtel v. Miller Cnty. Nursing Home Dist.*, 110 S.W.3d 799, 805 (Mo. banc 2003) (holding that the General Assembly is presumed to not have enacted meaningless provisions).

With this in mind, we turn to section 558.016.1(2), which permits a trial court to sentence a person to an extended term of imprisonment if "[t]he statute under which the person was found guilty contains a sentencing enhancement provision that is based on a prior finding of guilt or a finding of prior criminal conduct ***and the person is sentenced according to the statute***." (Emphasis added.) Notwithstanding Warren's contention to the contrary, section 571.070.2 is not an example of a statute that satisfies the requirements of section 558.016.1(2). Even if we assume that the State's authorized

15

election to enhance Warren's charged offense from a class D to a class C felony based on the prior commission of a dangerous felony is a "sentencing enhancement provision" as that term is used in section 558.016.1(2), (a question we need not address or resolve),[9] there is no term of imprisonment authorized by section 571.070, let alone an authorized *enhanced* term of imprisonment. As such, no person convicted of the offense of unlawful possession of a firearm pursuant to section 571.070, whether or not enhanced to a higher-class felony by the operation of section 571.070.2, is or can be "sentenced according to the statute." Instead, the offender's sentence would be that authorized for a class C felony under section 558.011, the general sentencing statute that does not address or involve the trial court's exercise of any authority to impose an extended term of imprisonment. Section 571.070 is not, therefore, a statute contemplated by, or included within the scope of, section 558.016.1(2). By extension, Warren's sentence for his conviction of the class C felony of unlawful possession of a firearm, which was enhanced to the class B felony range of punishment pursuant to section 558.016.1(1) and .7, was not double enhanced by the dual application of section 558.016.1(2).

---

[9]"[T]he long-held jurisprudential view [is] that habitual offender statutes merely define a recidivist status, for which the offender may be more heavily punished, rather than defining a separate offense, or even a separate element of the underlying offense with which the defendant is charged." *State v. Cullen*, 39 S.W.3d 899, 904 (Mo. App. E.D. 2001) (citing 39 Am Jur 2d, *Habitual Criminals and Subsequent Offenders*, sec. 1) In *State v. Ewanchen*, 799 S.W.2d 607, 608 (Mo. banc 1990), our Supreme Court thus held that section 577.023, which authorizes charging an intoxication-related traffic offense at a higher felony classification in the event an offender has previously been found guilty of other intoxication-related traffic offenses, is a "specific subsequent offense penalty enhancement statute."

16

In fact, section 558.016.1(1) and section 558.016.1(2) do not overlap as a matter of law and can never be dual applied to "double enhance" a sentence. Instead, they express discrete and distinguishable scenarios wherein a trial court has the general authority to impose an enhanced term of imprisonment at an enhanced range of punishment expressly authorized by statute. Section 558.016.1(2) is limited in its scope to self-contained statutes that describe an offense, that express the authority to enhance the sentence for the offense based on the commission of a prior crime or prior criminal conduct, *and* that express the authorized range of enhanced punishment for the offense.[10] In contrast, section 558.016.1(1) is limited in its scope to persistent and dangerous offenders as defined in section 558.016 who have been found guilty of an offense and whose enhanced sentence is necessarily described in and imposed pursuant to section 558.016.7 because the statute describing the offense of which the offender was convicted does not include an authorized range of enhanced sentence.

---

[10]An example of an offense that would fall within the scope of section 558.016.1(2) but not within the scope of section 558.016.1(1) is armed criminal action, an unclassified felony described in section 571.015, where the authorized range of punishment for the offense is expressly set forth in the statute, where the enhancement of the authorized range of punishment is expressly permitted if the same offense has been previously committed by the offender, and where the authorized range of the enhanced sentence is expressly set forth in the statute. It is no coincidence that in Warren's amended information which charged him with three counts of armed criminal action in violation of section 571.015 the State did *not* include language expressing an intent to seek an enhanced sentence for those offenses pursuant to section 558.016.1(1). It did not need to do so as the authority to enhance the term of imprisonment for, and the authorized range of the enhanced sentence for, armed criminal action is captured in section 571.015, making that statute an example of when a trial court could exercise the general authority to impose an enhanced term of imprisonment authorized by section 558.016.1(2).

17

Warren has not expressly relied on section 558.016.1(3) to argue that his sentence for unlawful possession of a firearm was erroneously double enhanced under two different subsections of section 558.016.1. A discussion of section 558.016.1(3) is nonetheless relevant to confirm our conclusion that Warren's "double-enhancement" concern is a legal impossibility because the subsections described in section 558.016.1 describe discrete and non-overlapping scenarios wherein a trial court is authorized to sentence a prior offender to an extended term of imprisonment.

Section 558.016.1(3) permits a trial court to sentence a person to an extended term of imprisonment if "[a] more specific sentencing enhancement provision applies that is based on a prior finding of guilt or a finding of prior criminal conduct." To be afforded meaning, the phrase "more specific sentencing enhancement provision" must stand in contrast to some other provision in section 558.016. And to be afforded meaning, section 558.016.1(3) must also be construed to not only describe *when* a trial court is authorized to impose an enhanced term of imprisonment but to also direct a trial court to the statute or statutes that describe the authorized range of enhanced sentence that can be imposed. *Reese*, 625 S.W.2d at 134 (finding that "[a]n accused may not receive an extended or enhanced punishment not authorized by the legislature").

The phrase "more specific sentencing enhancement provision" cannot refer to the sentencing enhancement provision mentioned in section 558.016.1(2). The sentencing enhancement provision mentioned in section 558.016.1(2) is, of necessity, specific to and set forth in a statute describing a particular offense. There can be no "more specific sentencing enhancement provision" applicable to that scenario. By process of

18

elimination, therefore, the phrase "more specific sentencing enhancement provision" must be construed to stand in contrast to section 558.016.1(1) which describes a trial court's authority to impose an enhanced term of imprisonment in reliance on *general* definitions of "persistent offender" and "dangerous offender" and in reference to the *generally* authorized range of enhanced sentences set forth in section 558.016.7. A "more specific sentencing enhancement provision" under section 558.016.1(3) must, therefore, qualify as a statute or class of statutes that: (i) defines "persistent" or "dangerous" offender "more specifically" than sections 558.016.3 or .4; and (ii) expresses the authorized range of enhanced sentence that can be imposed "more specifically" than section 558.016.7.

An obvious example is section 566.125. Section 566.125.1 requires a trial court to "sentence a person to an extended term of imprisonment if it finds the defendant is a persistent sexual offender and has been found guilty of attempting to commit or committing" any of the sexual offenses listed. *See* sections 566.030 through 566.064. Section 566.125.2 defines "persistent sexual offender" as one who has previously been found guilty of attempting to commit or committing any of the offenses listed in section 566.125.1, or similar offenses in any other jurisdiction. Section 566.125.3 expresses the required term of enhanced imprisonment a trial court shall impose for one who is determined to be a persistent sexual offender as "imprisonment for life without eligibility for probation or parole." Section 566.125 is "more specific" than section 558.016.1(1) with respect to the definition of when one is a "persistent offender" subject to enhanced terms of imprisonment and is "more specific" than section 558.016.7 with respect to the authorized enhanced term of imprisonment that can be imposed on a "persistent

19

offender."  It is plain, therefore, that sections 558.016.1(1) and (3) do not overlap, and that "double enhancement" by dual application of the provisions is not possible as a matter of law.[11]

We therefore accept Warren's contention that "or" as used in sections 558.016.1(1), (2), and (3) connotes the description of discrete and non-overlapping scenarios where a trial court has the authority to impose an enhanced term of imprisonment.  We reject, however, Warren's contention that his sentence for unlawful possession of a firearm pursuant to section 571.070.2 was improperly double enhanced by application of two different subsections of section 558.016.1.  Section 571.070 does not include *both* an enhanced punishment provision *and* an authorized range of enhanced sentencing for the enhanced offense as contemplated by section 571.070.2.  And section 571.070 does not include either a "more specific" definition of persistent or dangerous offenders or an authorized range of enhanced sentencing for those offenders as contemplated by section 558.016.1(3).  Thus, the only subsection of section 558.016.1 that authorized the trial court to impose an enhanced term of imprisonment for Warren's

---

[11]Other amendments to the Criminal Code in 2014, effective on January 1, 2017, illuminate the likely impetus behind amending section 558.016 to add section 558.016.1(3).  Prior to amendments that took effect on January 1, 2017, section 558.018 was housed in proximity to section 558.016.  Section 558.018 is, in all material respects, identical to section 566.125 and was simply transferred to the latter location effective on January 1, 2017.  To avoid confusion the General Assembly would have been motivated to express in section 558.016.1(3) that a trial court's general authority to impose enhanced sentences for persistent or dangerous offenders applies not just to the specifically authorized sentencing enhancements for such offenders set forth in sections 558.016.1(1) and .7 but as well to the more specifically defined persistent offenders described in transferred section 558.018.

20

conviction of the class C felony of unlawful possession of a firearm was section 558.016.1(1).

We also reject Warren's related contention that the amendments to section 558.016 effective January 1, 2017, were intended by the General Assembly to signal the abrogation of *Ewanchen* and *Hayes*. Instead, there remains a fundamental difference between statutes that authorize the State's ***pre-conviction*** election to enhance a charge from one class to a higher class based on the commission of a prior offense (but that do not describe the authorized range of enhanced punishment for the offense as charged), and section 558.016.1(1) which authorizes the trial court's ***post-conviction*** enhancement of an imposed sentence for the offense as charged ***if*** the defendant is a persistent or dangerous offender as defined in section 558.016 and is sentenced for the offense pursuant to section 558.016.7. *Ewanchen* recognized that the legislative intent reflected by the plain language of both statutes can and should be enforced. *See State v. Libertus*, 560 S.W.3d 578, 581 (Mo. App. W.D. 2018) (finding when the statute is unambiguous we must give effect to the statute as written); *and see State ex rel. Jones v. Prokes*, 637 S.W.3d 110, 116 (Mo. App. W.D. 2021) (finding where "multiple statutes are implicated in particular factual circumstances, we must attempt to harmonize, and give effect to, all of the relevant statutes").

Warren's sentence in the authorized range of punishment for a class B felony for his conviction of the class C felony of unlawful possession of a firearm was not impermissible.

Point One is denied.

21

***The trial court did not plainly err in failing to administer the trial oath or swear the jury in during trial. (Point Two)***

In his second point on appeal, Warren argues that the trial court erred by failing to administer the trial oath or to otherwise swear the jury in at any point during trial. Warren argues that the court's failure to swear the jury "facially establishes substantial grounds for this court to believe a manifest injustice has occurred" because without the jury being sworn "there is no point at which jeopardy attached, permitting the government to retry [Warren.]" Warren admits that his claim of error was not properly preserved for appellate review and requests that we conduct plain error review.

We may elect to review unpreserved claims of error pursuant to our plain error framework outlined in Rule 30.20.[12] In relevant part, Rule 30.20 states that "[w]hether briefed or not, plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom."

> Plain error review is discretionary, and this Court will not review a claim for plain error unless the claimed error facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted. The plain language of Rule 30.20 demonstrates that not every allegation of plain error is entitled to review. The plain error rule is to be used sparingly and may not be used to justify a review of every point that has not been otherwise preserved for appellate review. Unless manifest injustice or a miscarriage of justice is shown, an appellate court should decline to review for plain error under Rule 30.20. Finally, the defendant bears the burden of demonstrating manifest injustice entitling him to plain error review.

---

[12]All rule references are to *Missouri Court Rules, Volume 1 -- State, 2023* unless otherwise noted.

22

*State v. Garoutte*, 694 S.W.3d 624, 627-28 (Mo. App. W.D. 2024) (quoting *State v. Brandolese*, 601 S.W.3d 519, 526 (Mo. banc 2020)).

Here, the trial transcript contains no mention of the trial court swearing in the jury at any point after *voir dire*. Yet, in the docket sheet entries completed by the court at trial the checkbox for "jury sworn" is marked as completed.

Warren relies on several cases from outside of our jurisdiction to support his contention that in the case of a conflict between the trial court's docket and a trial transcript, the trial transcript controls. However, Warren misunderstands plain error review.

Before we can review a claim for plain error, Warren must facially establish "***substantial grounds*** for believing that manifest injustice or miscarriage of justice has resulted." *Id.* at 627 (emphasis added). Although Warren insists that the "record is devoid of any indication the jury was ever sworn at any point," that simply is not true. Warren's argument ignores the trial court's docket entry indicating that the jury was sworn prior to the court reading instructions number one and number two. As a result of the docket entry, the transcript's silence does not rise to the level of "substantial grounds" for believing there was a manifest injustice or miscarriage of justice warranting plain error review. Therefore, we decline to engage in plain error review of Warren's contention that the trial court failed to properly administer the oath or swear in the jury during Warren's trial.

Point Two is denied.

23

## Conclusion

The trial court's Judgment is affirmed.

_____
Cynthia L. Martin, Judge

All concur